$150⁻

## ER IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(1)

| | | |
|---|---|---|
| ATUAHENE OPPONG | : | **CIVIL ACTION** |
| 7200 Sprague Street | : | |
| Philadelphia Pa 19119 | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | No. 02 - CV - 2149 |
| FIRST UNION | : | |
| MORTGAGE CORPORATION | : | |
| 1100 Corporate Center Drive | : | |
| Releigh, NC 27607-5066 | : | |
| Defendant | : | **JURY TRIAL DEMANDED** |
| | | |
| WELLS FARGO | : | |
| HOME MORTGAGE INC | : | |
| 5024 Parkway Plaza Blvd | : | |
| Charlotte NC 28217 | : | |
| Defendant | : | |
| | | FILED |
| FRANCIS S. HALLINAN | | |
| 1617 JFK Blvd, #1400 | | APR 1 6 2002 |
| Philadelphia Pa 19103 | | |
| Defendant | | CHARLE E. KUNZ, Cler |
| | | 12. ²H |

### COMPLAINT

### I. JURISDICTION

1. This action arises under the Fair Debt Collection Practices Act,

15 U.S.C.A. §1692. Under 15 U.S.C.A. §1692k(d), an action to

enforce any liability created by this subchapter, Civil Liability on Violation of Fair Debt

Collection Practices Act, may be brought in any appropriate United States District Court

without regard to the amount in controversy within one year from the date on which the

violation occurs. The violations complained of occurred after April 13, 2001 which is less

(3/
given
4/14

than one year.

2. State law claims asserted under the Pennsylvania Common Law are before this Court pursuant to supplemental jurisdiction, 28 U.S.C. Section 1367.

## II. PARTIES

3. Plaintiff, Atuahene Oppong, ( hereinafter "Mr Oppong" ) is an adult consumer, residing at 7200 Sprague Street, Philadelphia. Pennsylvania, 19119.

4. Defendant, First Union Mortgage Corporation (hereinafter " First Union") of North Carolina, is a corporation maintaining and conducting its business in the State of Pennsylvania as a debt collector in accordance with the Fair Debt Collections Practices Act, 15 U.S.C.A. § 1692a(6).

5. Defendant, Wells Fargo Home Mortgage Inc, is (hereinafter " Wells Fargo") of North Carolina, is a corporation maintaining and conducting its business in the State of Pennsylvania as a debt collector in accordance with the Fair Debt Collections Practices Act, 15 U.S.C.A. § 1692a(6).

6. Defendant, Francis S. Hallinan (hereinafter "Mr. Hallinan"), is an adult individual maintaining and conducting his business in the State of Pennsylvania as a debt collector in accordance with the Fair Debt Collections Practices Act, 15 U.S.C.A. § 1692a(6). Mr Haillinan is an agent for First Union and Wells Fargo.

## III. FACTUAL ALLEGATIONS

7. On December 12, 1997, First Union's assignor of the mortgage loan debt

2.

(hereinafter "the debt") in dispute, filed a mortgage foreclosure action against Mr Oppong relating to his real property located at 7200 Sprague Street in the City of Philadelphia.

8.    After lengthy, costly and vicious litigation against Plaintiff, First Union's assignor of the debt, realized that it had initiated a wrongful action against Plaintiff. On November 29, 1999, First Union's assignor, Corestates Mortgage Services Corporation, of the debt voluntarily discontinued its action against Plaintiff.

9.    On January 19, 2000, First Union, the assignee of the debt, initiated a second mortgage foreclosure action against Plaintiff on the same cause of action as the first by its assignor.

10.    After lenghty, costly, and vicious second litigation against Mr Oppong, First Union sold its interest of the contract which is the subject of this litigation to Wells Fargo on April 13, 2001.

11.    Defendants conspired to violate Plaintiff's rights under the Fair Debt Collection Practices Act on April 13, 2001 and thereafter. Defendants conspired to harass and assault Plaintiff in their attempt to collect the debt. Defendants conspired to deprive Plaintiff of his Property Rights, a Constitutional Right.

12.    On August 21, 2001, Defendant, Mr. Hallinan, physically and verbally assaulted Plaintiff in his illegal attempt to collect the debt. Plaintiff has sufferred and continues to suffer physical and emotional injuries from the assault by Mr. Hallinan.

13.    On January 28, 2002, Plaintiff suffered from Defendants'violation of the Fair Debt Collection Practices Act. As a result of Defendants' violation of Plaintiff's right under the Fair Debt Collection Practices Act, the Common Pleas Court of Philadelphia

County ordered a judgment against Plaintiff in favor of Defendant, Wells Fargo, in its mortgage foreclosure action. In its memorandum, Plaintiff's Exhibit E, in support of its order, the Court admitted that it did not address Plaintiff's claim of Defendants' violation of Plaintiff's rights under the Fair Debt Collection Practices Act at the trial by a judge on January 25, 2002 and January 28, 2002. Wells Fargo falsely presented to the Common Pleas Court of Philadelphia that the Federal Court and the State Court had already addressed Plaintiff's claim under the Fair Debt Collection Practices Act and requested the Court to ignore Plaintiff's claim under the Fair Debt Collection Practices Act. The Common Pleas Court of Philadelphia erroneously sided with Wells Fargo and entered a verdict against Plaintiff on January 28, 2002 and also entered a judgment against Plaintiff and in favor of Wells Fargo on March 19, 2002.

14. Defendant, Wells Fargo, has filed a Writ of Execution against Plaintiff's Property and has scheduled a Sheriff's Sale of Plaintiff's Property on July 2, 2002.

## COUNT I

### PLAINTIFF'S CLAIM UNDER
### THE FAIR DEBT COLLECTION PRACTICES ACT

15. Allegations contained in paragraph 1 through 14 above are incorporated herein as if set forth in full.

16. Wells Fargo failed to give Plaintiff notice of validation of debt as required by 15 U.S C.A. § 1692g. Wells Fargo gave a defective notice of validation of debt, Plaintiff's Exhibit C, to Plaintiff on January 25, 2002, after it had assumed that the debt was valid without notice of validation and after it had presented itself before the Court of

4

Common Pleas of Philadelphia County as a debt collector demanding the payment of the debt and after the trial had began on its mortgage foreclosure action in the Common Pleas Court of Philadelphia County. Shortly after the trial had began, the trial judge ordered Wells Fargo and Mr Oppong to go out of the courtroom and try to settle the case. Wells Fargo gave Mr Oppong at the outside of the courtroom a document which Mr Oppong assumed to contain some validation notice of debt. The Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692g(a)(3), requires that a debt collector send the debtor written notice containing, among other things, a statement that unless the consumer within thirty days after receipt of the notice disputes the validity of the debt, the debt will be assumed valid by the collector. This document, Plaintiff's Exhibit C, handed to Plaintiff by Wells Fargo's Attorney, Ms Shah-Jani, on January 25, 2002 violated the validation of debt section of the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692g. The document was not marked as validation notice and also it did not state the name of the creditor and also it attempted to conceal sections 15 U.S.C.A. §1692g(a)(3) and 15 U.S.C.A. §1692g(a)(4) from Plaintiff by printing the statements at very reduced letters and also hiding the statement at the back page without any reference to it in the front. The document made a reference that the creditor's name was listed on the document but no creditor's was listed on the document, Plaintiff Exhibit C. The document made a statement as follows, " As of this date of this communication, you owe the amount specified" This statement in the document confirms the fact that Defendant, Wells Fargo, had assumed the debt as valid before it attempted to give any validation notice. The document continued to contradict itself by the following statemment; " If this is the first notice that you have

5

received from this office, be advised that: You may dispute the validity of the debt or any portion thereof. If you do so in writing within thirty(30) days of receipt of this letter, this firm will obtain and provide you written verification thereof; otherwise, the debt will be assumed to be valid. Likewise, you may request the name and address of the original creditor if different from above".

17. Wells Fargo and First Union allegedly gave Mr Oppong a letter dated February 26, 2001 which stated both parties' intent to tranfer the servicing of the mortgage loan debt from First Union to Wells Fargo effective March 16, 2002. Wells Fargo erroneously believes that this letter, Plaintiff's Exhibit A, constituted the notice of the validation of the debt. Wells Fargo's Attorney, Ms Shah-Jani, responded to Mr Oppong's letter to Wells Fargo, Plaintiff's Exhibit F, dated February 24 2002, disputing the debt and also requesting the name and address of the original creditor. In Wells Fargo's response, Plaintiff's Exhibit G, to Mr Oppong's letter, Wells Fargo referred to the alleged notice of the Real Estate Settlement Procedure Act dated February 26, 2001 as the validation notice. This letter does not contain all information dictated by statute. This letter does not state the amount of the debt to be validated as required by 15 U.S.C.A. § 1692g(a)(1). This letter does not contain a statement that unless the consumer within thirty days after receipt of the notice disputes the validity of the debt, the debt will be assumed valid by the collectoras required by 15 U.S.C.A. § 1692g(a)(3). This letter, Plaintiff's Exhibit A, did not comply with the provision of the Act requiring validation of debts. Wells Fargo failed to give notice of the validation of the mortgage loan debt as required by the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692g(a)(1),

6

15 U.S.C.A. § 1692g(a)(3), and 15 U.S.C.A. § 1692g(a)(4), to Plaintiff before assuming that the debt was valid and before assuming a legal action against Plaintiff in its attempt to collect the debt. Wells Fargo assumed that the debt was valid without validation notice to Plaintiff before presenting its demand for payment of the debt before the Trial Court of the Common Pleas Court Of Philadelphia on January 25, 2002.

18. Wells Fargo furnished Mr Oppong deceptive forms in violation of 15 U.S.C.A. § 1692J(a) in its attempt to collect the debt. Under the Act, it is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the ereditor of such consumer is participating in the collection of a debt such consumer allegedly owes such creditor, when in fact such person is not so participating and also to create the false belief in the consumer that the notice of validation of debt is given in the letter. First Union actively continued to demand the collection of the debt after the transfer in the Common Pleas Court of Philadelphia County and in the Superior Court of Pennsylvania and stated on the demand documents that copies were sent to Wells Fargo in an attempt to create a false belief in Mr Oppong that Wells Fargo had actually succeeded First Union in the litigation after the transfer of the servicing of the debt.

19. After receiving the document with some notice of validation from Wells Fargo on January 25, 2002, Mr Oppong timely sent a letter, Plaintiff's Exhibit F, to Wells Fargo disputing the debt. Wells Fargo responded with a letter, Plaintiff's Exhibit G, to Mr Oppong that Mr Oppong do not have right under the Fair Debt Collection Practices Act for verification of debt at such a time that it alleged as late. In its letter, Plaintiff Exhibit

7

G, Wells Fargo having now realized that its first letter, Plaintiff's Exhibit A, did not contain statement of the full notice of validation as required by 15 U.S.C.A. § 1692g(a)(3) now tells Mr Oppong after the fact that under FDCPA, he had thirty days from February 26, 2001 to request verification of debt from Wells Fargo. The Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692g(a)(3), requires that a debt collector send the debtor written notice containing, among other things, a statement that unless the consumer within thirty days after receipt of the notice disputes the validity of the debt, the debt will be assumed valid by the collector. Wells Fargo failed to comply with the Law in its attempt to collect the debt.

20. Wells Fargo's letter, Plaintiff's Exhibit G, shows that Wells Fargo continued to present false information to Mr Oppong in order to deceive Mr Oppong in its attempt to collect the debt. Wells Fargo alleged in the letter that Mr Oppong had thirty days from January 26, 2001 to dispute the debt. The Act states that if the notice of validation is given before the effective date of the transfer, the thirty days begins to toll from the effective date and in this case if Wells Fargo had given the notice of validation on January 26, 2001 and the effective was March 16, 2001, then the thirty days would have began to toll from March 16, 2001 and not January 26, 2001 as it attempted deceptively to make Mr Oppong to believe in violation of the Act.

21. After the transfer of the mortgage loan debt, Defendants engaged in a conspiracy to violate Plaintiff's right under the Fair Debt Collection Practices Act. Defendants conspired to confuse Plaintiff in the servicing of the mortgage loan debt in violation of the Fair Debt Collection Practices Act. In the Defendants' notice

8

of the Real Estate Settlement Procedure Act to Plaintiff, Plaintiff's Exhibit A, signed by both First Union and Wells Fargo, Plaintiff was directed to send payments and all inquiries to Defendant, Wells Fargo, after the transfer but Defendant, First Union, actively continued to maintain a suit in the Common Pleas Court of Philadelphia County against Plaintiff in an attempt to collect the debt after the transfer in violation of the Fair Debt Collection Practices Act. Defendant, Wells Fargo, had full knowledge that its assignor of the debt, First Union, was still attempting to collect the mortgage loan debt after the transfer. First Union did forward copies of its illigal demand documents to Plaintiff to Wells Fargo but Defendant, Wells Fargo, did not do anything to stop Defendant, First Union, from attempting to collect a mortgage loan debt after both First Union and Wells Fargo had instructed Plaintiff in a single notice of the Real Estate Settlement Procedure Act, Plaintiff's Exhibit A, to forward all payments and inquiries to Wells Fargo. Wells Fargo engaged in , was aware of and condoned the deceprive acts or practices on the part of its agents, Mr Hallinan and First Union, for whom Wells Fargo was responsible, Well Fargo and its agents, Mr Hallinan and First Union are liable under the Fair Debt Collection Practices Act.

22. Defendant, First Union, sold its interest in the debt to Defendant, Wells Fargo, for only Onc Dollar ($1.00) as a consideration for Defendant, Wells Fargo, to join in the conspiracy to violate Plaintiff's right under the Fair Debt Collection Practices Act. Wells Fargo engaged in , was aware of and condoned the deceptive acts or practices on the part of its agents, Mr Hillinan and First Union, for whom Wells Fargo was responsible. Wells Fargo and its agents, Mr Hillinan and First Union are liable under the Fair Debt Collection Practices Act, 15 U.S.C.A. §1692f.

9

23.     Defendant, Mr Hallinan, verbally threatened Mr Oppong of taking away

his property. In its attempt to collect a mortgage loan debt illegally, Mr Hallinan

physically and verbally assaulted Plaintiff. The assault incident is described in this

pleadings below. Under the Fair Debt Collection Practices Act , 15 U.S.C.A. § 1692d, a

debt collector may not engage in any conduct the natural consequence of which is to

harass, oppress, abuse any person in connection with the collection of a debt. It constitutes

a violation of the Act to use any language the natural consequence of which is to abuse the

hearer. The Act prohibits any threat by a debt collector to take any action that cannot

legally be taken.

24.     On May 15, 2001 and also on July 19, 2001, First Union, mailed a

Pre-Trial Memoranda to Judge Moss of the Common Pleas Court of Philadelphia and

copies to Plaintiff. In those documents, First Union was attempting to collect the

debt and was seeking the court to enforce the collection of the mortgage

loan debt in its favor. Defendant, First Union, had no right to attempt to collect the

debt on May 15, 2001 and on July 19, 2001. First Union deceptively

presented itself to the Common Pleas Court of Philadelphia County that it had right to the

debt. First Union maintained the civil action against Mr Oppong in its illegal attempt to

collect a debt after the transfer in order to harass him. Those Defendant's attempts to

collect a debt were in violation of the Fair Debt Collection Practices Act.

25.     First Union falsely presented itself as the master of the mortgage

foreclosure complaint against Plaintiff before the Federal Court on October 10, 2001.

10

First Union falsely presented to Honorable Judge Robreno that it had right to the debt and motioned the Federal Court to remand Plaintiff's removal to the State Court. The foreclosure action on the day of the hearing, October 10, 2001, was moot because First Union had divested its interest in the debt on March 15, 2001. First Union intended to harass and harm Plaintiff, so it requested that Plaintiff be sanctioned and the court granted its request. Plaintiff was sanctioned for exercising his due proess of the law in the amount of $350. First Union knew that it had no right to the debt but falsely presented itself before the Federal Court as the master of the complaint , demanding the collction of the debt in violation of the Act.

26.    On January 28, 2002, at the Trial in the Common Pleas Court of Philadelphia County, Defendant, Wells Fargo, falsely presented to the Trial Court that the Federal Court and the State Court had already reviewed Plaintiff's claim under the Fair Debt CollectionsPractices Act and that Wells Fargo requested the trial court to ignore Plaintiff's claim under the Fair Debt Collections Practices Act. Neither the State Court nor the Federal Court had addressed Plaintiff's claim under the Fair Debt Collection Practices Act. This false claim by Wells Fargo that the courts had addressed Plaintiff's claim under the Fair Debt Collection Practices Act prejudiced the trial court from addressing Mr Oppong's claims under the Fair Debt Collection Practices Act. The Act prohibits such false claims by Wells Fargo.

27.    On January 28, 2002, at the Trial in the Common Pleas Court of Philadelphia County, absent any evidence supporting Wells Fargo's claim that the Federal

Court and the State Court had already reviewed Plaintiff's claim under the Fair Debt Collections Practices Act, the Trial Court erroneously failed to address Plaintiff's claim under the Fair Debt CollectionsPractices Act. The trial court confirmed on March 19, 2002 in its Memorandum, Plaintiff's Exhibit E, in support of its verdict against Plaintiff that it did not address Plaintiff's claim under the Fair Debt Collections Practices Act. The trial Court stated:

> " The defendant alleges in his post-verdict motion as he
> did on several occasions prior to trial that the plaintiff
> violated the Fair Debt Collections Practices Act and
> the Real Estate Settlement Procedure Act. The Court
> will not address these issues in that they have been
> ruled on against the defendant both the Court of
> Common Pleas and the United States District Court
> for the Eastern District of Pennsylvania."

This above statement by the Trial of the Court of Common Pleas of Philadelpia County that Plaintiff's claim under the Fair Debt Collection Practices Act had been ruled on by the Federal Court and the State Court is incorrect.

28. The State Court's failure to address Plaintiff's claim under the Fair Debt Collection Practices Act at the Trial violated Plaintiff's right under the Equal Protection Clause of the United States Constitution.

29. Defendants' actions caused an impedement for Plaintiff to perform his contractual obligation with Wells Fargo which has resulted in a judgment against Plaintiff and in favor of Defendant, Wells Fargo, in the Common Pleas Court of Philadelphia

12

County, Pennsylvania.

30. Plaintiff has suffered from Wells Fargo's violation of the Fair Debt
Collection Practices Act. As a result of Wells Fargo's failure to comply with the Fair Debt
Collection Practices Act, Plaintiff has sustained actual damages in the amount in excess of
$1,217,549.22 ( one million two hundred and seventeen thousand five hundred and forty
and nine dollars and twenty-two cents). Plaintiff has sustained a judgment in the Common
Pleas Court of Philadelphia County in the amount of $117,549.22, together with statutory
interest from the date of judgment and other costs and charges collectible under the
mortgage foreclosure and sale of the Plaintiff's mortgaged property as a result of
Defendants' violation of the Fair Debt Collection Practices Act. Plaintiff has sustained a
lost of $1,100,000 ( one million and one hundred thousand dollars) from the dismissal of
his counterclaim against Defendant, Wells Fargo, by the Common Pleas Court of
Philadelphia County in which Plaintiff was damanding compensatory and punitive damages
in excess of $1,100,000(one million and one hundred thousand dollars).


**WHEREFORE**, Plaintiff demands judgment against Defendant, Wells
Fargo, in the amount in excess of $1,217,549.22 in his favor for actual damages and
additional amount for costs of this action and $1,000 for statutory damages.and additional
amount for costs of this action. Plaintiff demands judgment of $1,000 against Defendant,
First Union, for statutory damages. Plaintiff demands judgment of $1,000 against
Defendant, Mr Hallinan, for statutory damages.

13

## COUNT II

### PLAINTIFF'S CLAIM UNDER PENNSYLVANIA
### COMMON LAW OF PHYSICAL AND VERBAL ASSAULT

31.     Allegations contained in paragraph 1 through 30 above are incorporated herein as if set forth in full.

32.     On August 21, 2001, about 10 am Plaintiff encountered First Union's Attorneys in the hallway of City Hall of Philadelphia after a cancelled meeting with Judge Moss of Common Pleas Court of Philadelphia in the proceedings of First Union's complaint against Mr Oppong in which First Union was attempting to collect a debt illigally from Mr Oppong. Mr Oppong asked First Union's Attorney, Ms. Sheetal R. Shah-Jani, Esq, if she had any settlement offer. Ms. Shah-Jani responded that Mr Oppong must re-instate the mortgage with First Union in order to settle the case.

33.     First Union's demand that Plaintiff must re-instate the mortgage loan with First Union was a violation of the Fair Debt Collection Practices Act. Fair Debt Collection Practices Act prohibit First Union's illegal attempt to collect a debt. First Union had no right to attempt to collect a debt from Plaintiff on that day, August 21, 2001 because it had divested its interest in the debt and on that day no other party had substituted itself as a party plaintiff.

34.     Immediately after Ms. Shah-Jani had responded to Mr Oppong, , Mr Hallinan, who was accompanying Ms. Shah-Jani, shot out threatening remarks at Mr Oppong. He said, "You are having fun with this case, ain't you? I am going to take the house away from you." Mr Oppong asked him, " Are you sure you can take my house

14

away from me? You want to shake hands on this?" He reached out to shake Mr Oppong's hands. Mr Oppong shoke his hands. Mr Hallinan shoke Mr Oppong's hands with vengeance. His vicious grip crushed Mr Oppong's hand like a crumbled piece of paper. Mr Oppong still feels the pain from his hard and vicious hand shake. This action of Mr Hallinan against Mr Oppong was an unprovoked physical assault on Mr Oppong. His face was stern and red. He was very angry at Mr Oppong . This incident has worsened the emotional pain and suffering inflicted on Mr Oppong by First Union.

**WHEREFORE**, Plaintiff demands judgment against Defendant, First Union, and Defendant, Mr Hallinan and in his favor for the unprovoked physical and verbal assault on Plaintiff by Defendants and for intentional infliction of emotional distress in excess of Five Hundred Thousand Dollars ($500,000.00) for compensatory damages, punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00), attorney fees, costs of this action and such other equitable relief as may be just and proper under the circumstances of this case.

## COUNT III

### PLAINTIFF'S CLAIM UNDER PENNSYLVANIA COMMON LAW OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

35.     Allegations contained in paragraph 1 through 34 above are incorporated herein as if set forth in full.

36.     All of Defendants' behavior and conduct has been extreme, outrageous, shocking, and of such egregiousness as to be utterly intolerable in any civilized society,

15

and was specifically directed at Plaintiff with malice, intending to cause him serious psychological and emotional harm, damage and distress, pain and suffering, and which did indeed directly caused him such serious emotional harm, psychological distress and damage, as well as financial harm and justifies an award of substantial punitive damages in addition to compensatory damages for intentional infliction of emotional distress.

**WHEREFORE**, Plaintiff demands judgment against Defendants, First Union and Mr Hallinan and in his favor for compensatory damages for intentional infliction of emotional distress in excess of Five Hundred Thousand Dollars ($500,000.00) for compensatory damages, punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00), attorney fees, costs of this action and such other equitable relief as may be just and proper under the circumstances of this case.

Respectfully submitted,

Date: 4/16/02

ATUAHENE OPPONG
Plaintiff, Pro Se.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## VERIFICATION

I, Atuahene Oppong, the Plaintiff, do hereby verify that the statements made in the

foregoing Complaint are true and correct to the best of my knowledge, information and

belief, and I understand that the statements in said Complaint are made subject to the

panalies of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Atuahene Oppong
Plaintiff, Pro Se

4/15/02

17

PLAINTIFF'S EXHIBIT
A

A Letter from Defendants,
Wells Fargo and First Union
to Plaintiff dated
February 26, 2001

 P.O. Box 900.
Raleigh, NC 27675-9001



1 Home Campus
Des Moines, IA 50328

February 26, 2001

Aviso Importante Para Las Personas Que Hablan Espanol:
Esta notificacion es de suma importancia ya que afecta la
seguridad de su cuenta de su casa. Si usted no entiende el
contenido de esta carta obtenga una traduccion inmediatamente.
Muchas gracias.
Servicio al Cliente 866-261-5643

Atuahene Oppong
7200 Sprague St.
Philadelphia PA 19119

Old Loan Number: 0009675884
New Loan Number: 4176380

Dear Customer:

On behalf of First Union Mortgage Corporation and Wells Fargo Home Mortgage, Inc., we are pleased to inform you that First Union Mortgage Corporation will be transferring the servicing of your mortgage loan to Wells Fargo Home Mortgage effective March 16, 2001. Wells Fargo Home Mortgage is a subsidiary of Wells Fargo & Company, a national, diversified financial services company with a proud history spanning nearly 150 years. Wells Fargo Home Mortgage is a leading home lender, dedicated to providing customers with superior customer service and solutions to your personalized home financing needs.

The transfer of mortgage servicing is a common practice in today's market and does not affect any terms or conditions of your mortgage, other than those provisions related to the servicing of your mortgage. Please refer to the Notice of Assignment printed on the reverse side of this letter for the Real Estate Settlement Procedures Act (RESPA) information. Wells Fargo Home Mortgage is committed to providing the quality service you are accustomed to receiving.

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practice Act to inform you that if your loan is currently delinquent or in default, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

Beginning March 16, 2001, Wells Fargo Home Mortgage will be responsible for processing your loan payments and answering your questions. Payments will be applied to your loan by First Union Mortgage Corporation if received prior to March 16, 2001, or forwarded to Wells Fargo Home Mortgage for a period of sixty days, if received on or after that date. If your mortgage payments were automatically deducted from an account, your drafting will resume when your loan becomes current. Once Wells Fargo Home Mortgage receives a payment, you will receive a monthly statement at no charge, which reflects that payment application and provides you with a coupon for your next payment, therefore you should dispose of any remaining First Union Mortgage Corporation coupons. If you include additional funds, please explain how you wish to have the additional funds applied. Your check should be made payable and mailed to:

Wells Fargo Home Mortgage, Inc.
PO Box 30107
Tampa, FL 33630-3107

All correspondence regarding your loan should be addressed as indicated below:

| Until 3/15/01: | Beginning 3/16/01: |
|---|---|
| First Union Mortgage Corporation | Wells Fargo Home Mortgage, Inc. |
| Attn: Customer Service Department | Correspondence Resolution X2501-01T |
| P.O. Box 900001 | 1 Home Campus |
| Raleigh, NC 27675-9001 | Des Moines, IA 50328-0001 |
| Fax (919) 882-6075 | Fax (515) 237-7070 |

If you are currently enrolled in the Equity Accelerator program through First Union, your account will automatically transfer to the Wells Fargo Equity Enhancement program under the same parameters with which it is set-up today. If you have questions about this transfer please contact the Equity Enhancement Customer Service group at (800) 551-5714 after March 15, 2001. If you are currently paying your mortgage payment through a bill payment service, such as Douglas Michaels or Mortgage Management, you will need to make arrangements to have the payee changed to Wells Fargo Home Mortgage effective March 16, 2001. This transfer of servicing may have an effect on the payment method for your optional insurance products. If your insurance is affected, you will be sent separate instructions. Unless directed to do otherwise, you should continue to include your premium in your monthly mortgage payment. By January 31, 2002, Wells Fargo Home Mortgage will provide you with a statement reflecting the amount of mortgage interest and real estate taxes paid for the entire year of 2001.

Our goal is to continue to meet your expectations of service. If you have any questions regarding this transfer, please contact First Union Customer Service at (800) 634-9322, Monday through Friday, 7:15 AM to 7:00 PM Central Time. After March 15, 2001, your questions should be directed to Wells Fargo Home Mortgage Customer Service toll-free at (866) 261-5643, Monday through Friday, 7:00 AM to 7:00 PM, or Saturday, 8:00 AM to 2:00 PM, Central Time.

Sincerely,

Joanna Tillotson
Vice President
First Union Mortgage Corporation

Leesa Whitt Potter
Leesa Whitt Potter
Assistant Vice President
Wells Fargo Home Mortgage, Inc.

# NOTICE OF ASSIGNMENT, SALE OR TRANSFER
## OF SERVICING RIGHTS

Except in limited circumstances, Section 6 of the Real Estate Settlement Procedures Act (RESPA)(12 U.S.C. Section 2605) requires that your present servicer send you notice of the assignment, sale, or transfer of the servicing rights to your mortgage loan that, the right to collect payments from you at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at closing.

You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA.

During the 60 day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you

Section 6 of RESPA gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reasons for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals and classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

PLAINTIFF'S EXHIBIT

C

WELLS FARGO'S NOTICE
OF VALIDATION DEBT.

**Federman and Phelan, L.L.P.**
One Penn Center at Suburban Station
1617 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103-1814
215-563-7000 ext. 1338
Fax 215-568-0719

Raymond J. Begley
Legal Assistant



Representing Lenders in
Pennsylvania & New Jersey

## **PAYOFF FIGURE**

| NAME | OPPONG, ATUAHENE | LOAN # | 4176380 |
|------|------------------|--------|---------|
| DATE | 1/22/02 | GOOD THRU | 1/25/02 |

Payoff Figures **MUST BE VERIFIED** AFTER DUE DATE **BEFORE** SUBMITTING PAYMENT!

| | |
|---|---|
| Principal Balance | $63,106.68 |
| Interest | $24,491.25 |
| Late Charges | $1,580.99 |
| Escrow Advance | $8,763.37 |
| Property Inspection/Maintenance | $250.00 |
| Recording/Release Fee | |
| Hazard Insurance | $0.00 |
| BPO/Appraisal | $200.00 |
| Suspense | $0.00 |
| NSF | $0.00 |
| Pro Rata MIP/Premium Mortgage Insurance | $0.00 |

| | |
|---|---|
| Attorney Costs | $3,774.58 |
| Attorney Fees | $13,764.50 |
| Sheriff's Commission (2%) | $0.00 |

| | |
|---|---|
| TOTAL | $115,931.37 |

ALL FUNDS MUST BE IN CERTIFIED FORM MADE PAYABLE TO YOUR MORTGAGE CO.

**Please be advised that this firm is a debt collector attempting to collect a debt. Any information received will be used for that purpose. If you have received a discharge in bankruptcy, and this debt was not reaffirmed, this correspondence is not and should not be construed to be an attempt to collect a debt, but only enforcement of a lien against property.**

**As of the date of this communication, you owe the amount specified. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (215) 563-7000 and ask for the Reinstatement Department.**

If this is the first notice that you have received from this office, be advised that: You may dispute the validity of the debt or any portion thereof. If you do so in writing within thirty(30) days of receipt of this letter, this firm will ⸱ and provide you written verification thereof; otherwise ⸱ debt will be assumed to be valid. Likewise, you may request the name and address of the original creditor if different from above.

# Federman and Phelan, L.L.P.
## One Penn Center at Suburban Station
## 1617 John F. Kennedy Blvd.
## Suite 1400
## Philadelphia, PA 19103-1814
## 215-563-7000 ext. 1338
## Fax 215-568-0719

Raymond J. Begley
Legal Assistant

Representing Lenders in
Pennsylvania & New Jersey

### REINSTATEMENT FIGURE

| **NAME:** | OPPONG, ATUAHENE | **LOAN #** | 4176380 |
|---|---|---|---|
| **DATE:** | 1/22/02 | **GOOD THRU** | 1/25/02 |

| | |
|---|---|
| Total Payment Amount (54 Payments) | $60,183.62 |
| Late Charges | $1,580.99 |
| Escrow Shortage | $1,943.71 |
| Property Inspections | $250.00 |
| NSF | $0.00 |
| BPO/Appraisals | $200.00 |
| Suspense | $0.00 |
| | |
| | |
| Attorney Costs | $3,774.58 |
| Attorney Fees | $13,764.50 |
| Sheriff's Commission (2%) | $0.00 |

| | |
|---|---|
| TOTAL | $81,697.40 |

#### ALL FUNDS MUST BE IN CERTIFIED FORM MADE PAYABLE TO YOUR MORTGAGE CO.

Please be advised that this firm is a debt collector attempting to collect a debt. Any information received will be used for that purpose. If you have received a discharge in bankruptcy, and this debt was not reaffirmed, this correspondence is not and should not be construed to be an attempt to collect a debt, but only enforcement of a lien against property.

As of the date of this communication, you owe the amount specified. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (215) 563-7000 and ask for the Reinstatement Department.

If this is the first notice that you have received from this office, be advised that: You may dispute the validity of the debt or any portion thereof. If you do so in writing within thirty(30) days of receipt of this letter, this firm will obtain and provide you written verification thereof; otherwise, the debt will be assumed to be valid. Likewise, you may request the name and address of the original creditor if different from above.

# PLAINTIFF'S EXHIBIT

# E

PLAINTIFF'S EVIDENCE OF
DAMAGES SUSTAINED AS
A RESULT OF DEFENDANTS'
VIOLATION OF FAIR DEPT
COLLECTION PRACTICES ACT
&
ORDER FROM THE COMMON PLEAS
COURT OF PHILADELPHIA COUNTY

IN THE
COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

WELLS FARGO HOME MORTGAGE, INC. :
   **Substituted Party Plaintiff** :
                     :
        vs. :    **JANUARY TERM, 2000**
                     :
**ATUAHENE OPPONG** :    **NO. 02221**

## ORDER and MEMORANDUM

.**AND NOW**, to wit, this   *19th*  day of   MARCH , 2002, upon consideration of

defendant's Motion for Post-Trial Relief, and plaintiff's response thereto, it is hereby ORDERED

and DECREED that said motion is **DENIED**.

It is further ORDERED that judgment is entered in favor of the plaintiff and against the

defendant in the amount of $117,549.22, together with statutory interest from the date of judgment

and other costs and charges collectible under the mortgage foreclosure and sale of the mortgaged

property.

It is further ORDERED that defendant's counterclaim against the plaintiff is dismissed.

Judgment is entered for the plaintiff and against the defendant on the counterclaim.

BY THE COURT:

COHEN, GENE D.,     J.