Steven J. Adams, Esquire
STEVENS & LEE
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2133
Attorneys for defendant
First Union Mortgage Corporation



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ATUAHENE OPPONG,
        :
    Plaintiff    :  No. 02-CV-2149
        :
    v.      :
        :
FIRST UNION MORTGAGE  :
CORPORATION, WELLS FARGO :
HOME MORTGAGE, INC., and  :
FRANCIS S. HALLINAN,   :
        :
    Defendants   :
        :



## MOTION OF DEFENDANT FIRST UNION
## MORTGAGE CORPORATION FOR SUMMARY JUDGMENT

Defendant First Union Mortgage Corporation (**"First Union"**) moves for

summary judgment pursuant to Fed. R.Civ. P. 56 and in support thereof, avers as follows:

  1. Plaintiff Atuahene Oppong (**"Mr. Oppong"**) commenced this case on

April 16, 2002 by filing a three count complaint (the **"Complaint"**) against First Union and

defendants Wells Fargo Home Mortgage, Inc. (**"Wells Fargo"**), and Francis Hallinan

(**"Mr. Hallinan"**).

  2. In the Complaint, Mr. Oppong asserts that First Union is liable to him

(i) under the federal Fair Debt Collection Practices Act for alleged violations thereof, (ii) for

SLi 345158v1/02995.781

alleged physical and verbal assaults committed by Mr. Hallinan on August 21, 2001 and (iii) for the intentional infliction of emotional distress based on the conduct alleged in the Complaint.

      3.    First Union now moves for summary judgment as to all claims asserted against it by Mr. Oppong pursuant to Fed. R. Civ. P. 56.

      4.    In support of this Motion for Summary Judgment, First Union is filing concurrent herewith a separate Appendix of Exhibits ("**Appendix of Exhibits**") which includes the following:

      (a)    the Notes of Testimony (including exhibits) of Mr. Oppong's deposition conducted on April 9, 2003 ("**N.T. Oppong Dep.**");

      (b)    the Affidavit of Selina Schroer, Assistant Secretary of First Union ("**Schroer Affidavit**");

      (c)    Mr. Oppong's Answers to Wells Fargo's First Set of Interrogatories Directed to Mr. Oppong;

      (d)    Mr. Oppong's Answers to Wells Fargo's First Set of Expert Interrogatories Directed to Mr. Oppong;

      (e)    Mr. Oppong's Answers to First Union's First Set of Interrogatories Directed to Mr. Oppong;

      (f)    Wells Fargo's Answers to First Union's First Set of Interrogatories Directed to Wells Fargo;

      (g)    Mr. Hallinan's Answers to First Union's First Set of Interrogatories Directed to Mr. Hallinan;

      (h)    First Union's Answers to Mr. Oppong's Request for Admissions of First Union;

2

(i) Wells Fargo's Answers to Mr. Oppong's Request for Admissions by Wells Fargo[1]; and

(j) Mr. Hallinan's Answers to Mr. Oppong's Request for Admissions by Mr. Hallinan.

5. The pleadings and the foregoing transcript, affidavit and discovery responses demonstrate the existence of the following facts that are not subject to genuine dispute:

(a) On March 6, 1995, CoreStates Mortgage Services Corporation ("**CoreStates**") loaned to Mr. Oppong the sum of $75,000 (the "**Loan**"), repayment of which was secured by a mortgage against Mr. Oppong's residence located at 7200 Sprague Street, Philadelphia, Pennsylvania (the "**Mortgage**"). [Schroer Affidavit, ¶ 3].

(b) Shortly after the Loan closing, CoreStates sold the Loan to the Federal Home Loan Mortgage Corporation ("**FHLMC**"), but retained the right to service the Loan and Mortgage for FHLMC. [Schroer Affidavit, ¶ 4].

(c) CoreStates was merged with and into First Union Mortgage Corporation effective May 1, 1998. [Schroer Affidavit, ¶ 5].

(d) After its merger with CoreStates, First Union continued to service the Loan and Mortgage for FHLMC through March 15, 2001. [Schroer Affidavit, ¶ 6].

---

[1] Since Mr. Oppong did not provide First Union with a separate set of the exhibits purportedly attached to these Requests for Admissions, First Union assumes that such exhibits are identical to the exhibits attached to Mr. Oppong's Request for Admissions Directed to First Union that were served in the same envelope on the same date.

(e)  As of August 31, 2000, First Union and Wells Fargo entered into a
     Servicing Rights Purchase and Sale Agreement (the "**Servicing Rights
     Sale Agreement**") pursuant to which First Union agreed to sell and
     transfer to Wells Fargo the right to service approximately $36 billion in
     residential mortgage loans, including Mr. Oppong's Loan, that First
     Union was servicing for, or under pooled programs of, FHLMC and
     others.  [Schroer Affidavit, ¶ 7].

(f)  With respect to those loans owned by or pooled under programs of
     FHLMC, which included Mr. Oppong's Loan, the effective Transfer
     Date of the servicing rights to Wells Fargo was to be March 16, 2001.
     [Schroer Affidavit, ¶ 8, Servicing Rights Sale Agreement, Sections 1.2
     and 2.1(a) and 2.3].

(g)  In accordance with Section 4.7 of the Servicing Rights Sale Agreement,
     on or about February 26, 2001, Mr. Oppong was notified that the
     servicing of the Loan was being transferred from First Union to Wells
     Fargo effective March 16, 2001.  [See Complaint, Exhibit "A;" Schroer
     Affidavit, ¶ 9].

(h)  On or About February 28, 2001, Federman & Phelan was notified by
     First Union that the servicing of Mr. Oppong's Loan was being
     transferred to Wells Fargo effective March 16, 2001.  [Schroer Affidavit,
     ¶ 10].

(i)  The servicing of Mr. Oppong's Loan was transferred by First Union to
     Wells Fargo effective March 16, 2001, pursuant to the Servicing Rights
     Sale Agreement and Wells Fargo assumed all obligations and liabilities

4

of First Union that accrued after the Sale Date (August 31, 2000) with respect to the Servicing Rights being sold and transferred to it. [Schroer Affidavit, ¶ 11, Servicing Rights Sale Agreement, Section 2.1; Appendix of Exhibits, Exhibit "F" – Answer of Wells Fargo to First Union's Interrogatory No. 2].

(j) Pursuant to Section 4.12(a) of the Servicing Rights Sale Agreement, First Union, as successor by merger to CoreStates, caused the Mortgage to be nominally assigned to Wells Fargo by assignment dated April 13, 2001, but made effective March 15, 2001, to facilitate Wells Fargo's servicing of the Loan for FHLMC on and after March 16, 2001. [Schroer Affidavit, ¶ 12].

(k) Prior to March 16, 2001, Federman & Phelan was authorized by First Union, as servicer for FHLMC, to take action to collect the Loan and prosecute the mortgage foreclosure action captioned <u>First Union Mortgage Corporation, s/b/m to CoreStates Mortgage Services Corporation vs. Atuahene Oppong</u>, No. 002221, January 2000 Term (the **"2000 Foreclosure Action"**). [Schroer Affidavit, ¶ 13].

(l) Federman and Phelan ceased representing First Union with respect to the collection of the Loan and the prosecution of the 2000 Foreclosure Action on March 15, 2001. [Schroer Affidavit, ¶ 14; Appendix of Exhibits, Exhibit "G" – Answer of Mr. Hallinan to First Union's Interrogatory No. 8].

(m) At no time after March 15, 2001, did Federman & Phelan communicate any further with First Union regarding the Loan or the 2000 Foreclosure

5

Action until shortly after Mr. Oppong threatened to commence this lawsuit in November of 2001. [Schroer Affidavit, ¶ 16].

(n) Federman & Phelan submitted no bills to First Union for services rendered or expenses incurred after March 15, 2001, in connection with the collection of the Loan or the pursuit of the 2000 Foreclosure Action. [Schroer Affidavit, ¶ 17].

(o) To the extent Federman & Phelan continued to collect the Loan or prosecute the 2000 Foreclosure Action in the name of First Union on or after March 16, 2001, it did so without the knowledge, permission or consent of First Union. [Schroer Affidavit, ¶ 15; Appendix of Exhibits, Exhibit "G" – Answer of Mr. Hallinan to First Union's Interrogatory No. 6].

(p) From March 16, 2001, forward, Federman & Phelan represented Wells Fargo, not First Union, with respect to the collection of the Loan and the pursuit of the 2000 Foreclosure Action. [Schroer Affidavit, ¶ 18; Appendix of Exhibits, Exhibit "F" and "G" – Answer of Wells Fargo to First Union's Interrogatory No. 3 and Answers of Mr. Hallinan to First Union's Interrogatory Nos. 5 and 8].

(q) All of the conduct that forms the basis for Mr. Oppong's claims against First Union in this lawsuit took place after April 13, 2001. [Complaint, ¶ 1; N.T. Oppong Dep., pp. 12-24, 45-49].

(r) Federman & Phelan appeared at the June 5, 2001, hearing in the 2000 Foreclosure Action as counsel for Wells Fargo, not as counsel for First Union. [See Appendix of Exhibits, Exhibits "G" and "I" – Answers of

Mr. Hallinan to First Union's Interrogatory Nos. 5 and 8 and Answers of Wells Fargo to Mr. Oppong's Request for Admissions Nos. 20 and 29].

(s) On August 21, 2001, Mr. Hallinan was a partner in the law firm of Federman & Phelan. [See Appendix of Exhibits, Exhibit "J" – Answer of Mr. Hallinan to Mr. Oppong's Request for Admission No. 1].

(t) Mr. Hallinan was not representing First Union on August 21, 2001. [Schroer Affidavit, ¶ 20; Appendix of Exhibits, Exhibit "G" - Answer of Mr. Hallinan to First Union's Interrogatory No. 8].

(u) No one employed by First Union had any direct contact with Mr. Oppong with respect to the Loan, the Mortgage or the 2000 Foreclosure Action after March 15, 2001 (other than the letter of response to Mr. Oppong from Marie Harper dated November 2, 2001 – See Exhibit "R" attached to Mr. Oppong's Requests for Admissions Directed to First Union). [Sehroer Affidavit, ¶ 19].

(v) At no time did First Union directly engage in any of the offensive conduct alleged in the Complaint and all such conduct (if true) was taken by Federman & Phelan or one of its attorneys. [See Appendix of Exhibits, Exhibit "E" – Answers of Mr. Oppong to First Union's Interrogatory Nos. 10, 11, 15, 18 and 19].

(w) The only alleged physical injury suffered by Mr. Oppong as a result of his encounter with Mr. Hallinan on August 21, 2001, was to his right hand, he sought no medical treatment for this alleged injury, he did not incur any medical bills for this alleged injury, he suffered no loss of income as a result of such injury and he does not intend to call any

7

expert witnesses at trial. [See Appendix of Exhibits, Exhibits "C" and "D" – Answers of Mr. Oppong to Wells Fargo's Interrogatory Nos. 4, 7, 9, 10, 11, 13, 15, 16, 17, 20 and 21 and Answers of Mr. Oppong to Wells Fargo's Expert Interrogatories].

6. The above facts demonstrate that Mr. Oppong has no claim against First Union under the Fair Debt Collection Practices Act (the **"FDCPA"**) because at no time has First Union been a "debt collector" within the meaning of such act.

7. A person collecting or attempting to collect a debt owed or due or asserted to be owed or due another is not a "debt collector" under the FDCPA to the extent such activity concerns a debt which was originated by such person. See 15 U.S.C. § 1692a(6)(F)(ii).

8. CoreStates was the originator of the Loan and First Union is the successor, by operation of law and not by way of assignment, to CoreStates.

9. First Union, therefore, as a matter of law has never been a "debt collector" with respect to any actions taken by it in connection with the collection of the Loan or the prosecution of the 2000 Foreclosure Action and only "debt collectors" can be held liable for damages under the FDCPA for violations thereof.

10. As admitted in the Complaint, on or about February 26, 2001, Mr. Oppong was notified by First Union and Wells Fargo that effective March 16, 2001, the servicing of his Loan was being transferred from First Union to Wells Fargo.

11. Significantly, (i) all of the actions alleged in the Complaint which form the basis of Mr. Oppong's claims against First Union occurred after April 13, 2001, (ii) all such actions were taken by either Federman & Phelan or one of its attorneys (including Mr. Hallinan) and (iii) all actions taken by Federman & Phelan or any of its attorneys in the name of First Union on or after March 16, 2001, with respect to the collection of the Loan or the prosecution of

8

the 2000 Foreclosure Action were taken without the knowledge, permission or consent of First Union, and were taken while Federman & Phelan was acting as counsel for Wells Fargo. [Complaint, ¶ 1; N.T. Oppong Dep., pp. 12-24, 45-49; Sehroer Affidavit, ¶ 15; Appendix of Exhibits, Exhibits "F" and "G" – Answer of Wells Fargo to First Union's Interrogatory No. 3 and Answers of Mr. Hallinan to First Union's Interrogatory Nos. 5, 6 and 8].

12. Therefore, First Union is not liable to Mr. Oppong under Connts I, II or III of the Complaint for any actions taken by Federman and Phelan, any of its attorneys or Mr. Hallinan after March 15, 2001, with respect to the collection of the Loan or the prosecution of the 2000 Foreclosure Action, even if sueh actions were taken by Federman & Phelan or Mr. Hallinan in the name of First Union after that date.

13. In addition, with respect to Counts I, II and III of the Complaint, First Union cannot, as a matter of law, be held vicariously liable for the improper actions allegedly engaged in by Federman & Phelan and/or Mr. Hallinan because, at all times relevant, Federman & Phelan and Mr. Hallinan were, at most, acting as independent contractors on behalf of First Union and not as its servants.

14. Finally, Count III must be dismissed because Mr. Oppong will admittedly be unable to meet his burden of proof at trial sinee he will present no medieal evidence to support his elaim of intentional infliction of emotional distress.

15. In further support of this Motion, First Union relies on its memorandum of law being filed concurrent herewith, which incorporates herein by referenee.

9

WHEREFORE, defendant First Union Mortgage Corporation prays that all claims asserted against it in the above-captioned case be dismissed and that First Union be dismissed as a defendant in this case.

Respectfully submitted,

STEVENS & LEE

By:_____

Steven J. Adams
Attorney I.D. No. 56293
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679
(610) 478-2133

Attorneys for Defendant
First Union Mortgage Corporation

SL1 345158v1/02995.7R1

## CERTIFICATE OF SERVICE

I, Steven J. Adams, Esquire, certify that on this date, I served a true and correct copy of the foregoing Motion of First Union Mortgage Corporation For Summary Judgment upon the following persons, by depositing the same in the United States mail, postage prepaid, addressed as follows:

> Mr. Atuahene Oppong
> 7200 Sprague Street
> Philadelphia, PA 19119
>
> Daniel S. Bernheim, III, Esquire
> Silverman, Bernheim & Vogel
> Suite 910
> Two Penn Center Plaza
> Philadelphia, PA 19102

Steven J. Adams, Esquire

Date: May 6, 2003

FILED

Steven J. Adams, Esquire
STEVENS & LEE
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2133
Attorneys for defendant



## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ATUAHENE OPPONG,             :
                                 :
           Plaintiff             :    No. 02-CV-2149
                                 :
          v.                            :
                                 :
FIRST UNION MORTGAGE       :
CORPORATION, WELLS FARGO    :
HOME MORTGAGE, INC., and     :
FRANCIS S. HALLINAN,         :
                                 :
          Defendants          :
                                 :

## MEMORANDUM OF LAW OF DEFENDANT FIRST UNION MORTGAGE CORPORATION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant First Union Mortgage Corporation (**"First Union"**) submits this

memorandum of law in support of its Motion for Summary Judgment (the **"Motion"**).

## I. PROCEDURAL HISTORY.

Mr. Oppong commenced this action on April 16, 2002, by filing a complaint (the

**"Complaint"**) against defendants First Union, Wells Fargo Home Mortgage, Inc. (**"Wells**

**Fargo"**) and Francis S. Hallinan (**"Mr. Hallinan"**). In Count I of the Complaint, Mr. Oppong

seeks money damages from all of the defendants for alleged violations of the federal Fair Debt

Collection Practices Act (the **"FDCPA"**), 15 U.S.C. § 1691a, et seq. In his prayer for relief to

Count I, Mr. Oppong only requests a money judgment of $1,000 against First Union for

1

"statutory" damages. In Count II of the Complaint, Mr. Oppong seeks money damages from all of the defendants in an amount in excess of $500,000 for alleged physical and verbal assaults committed on him by Mr. Hallinan on August 21, 2001. Count III sets forth a claim for intentional infliction of emotional distress.

First Union filed its answer to the Complaint on May 14, 2002, also asserted cross claims against Wells Fargo and Mr. Hallinan. Wells Fargo filed an answer to the Complaint and Mr. Hallinan moved to dismiss the Complaint on or about May 13, 2002 (the **"Motion to Dismiss"**). On or about June 5, 2002, Wells Fargo moved to have First Union dropped from this case as being an improper party (the **"Rule 21 Motion"**).

By order dated June 28, 2002 and entered July 1, 2002, this Court stayed this case and placed it in suspense until further order of the Court. On or about December 4, 2002, Mr. Oppong moved to lift the stay and suspension of this case. On February 6, 2003, the Court granted Mr. Oppong's motion to reinstate the case, denied the Motion to Dismiss and denied the Rule 21 Motion. A scheduling order was entered on February 7, 2003, establishing discovery and summary judgment deadlines of May 6, 2003. Discovery has been taken by all parties and First Union now moves for summary judgment.

## II.  FACTUAL BACKGROUND.

On March 6, 1995, CoreStates Mortgage Services Corporation (**"CoreStates"**) loaned to Mr. Oppong the sum of $75,000 (the **"Loan"**), repayment of which was secured by a mortgage against Mr. Oppong's residence located at 7200 Sprague Street, Philadelphia, Pennsylvania (the **"Mortgage"**). [Sehroer Affidavit, ¶ 3]. Shortly after the Loan closing, CoreStates sold the Loan to the Federal Home Loan Mortgage Corporation (**"FHLMC"**), but retained the right to service the Loan and Mortgage for FHLMC. [Schroer Affidavit, ¶ 4].

2

CoreStates was merged with and into First Union Mortgage Corporation effective May 1, 1998. [Schroer Affidavit, ¶ 5]. After its merger with CoreStates, First Union continued to service the Loan and Mortgage for FHLMC through March 15, 2001. [Schroer Affidavit, ¶ 6].

As of August 31, 2000, First Union and Wells Fargo entered into a Servicing Rights Purchase and Sale Agreement (the "**Servicing Rights Sale Agreement**") pursuant to which First Union agreed to sell and transfer to Wells Fargo the right to service approximately $36 billion in residential mortgage loans, including Mr. Oppong's Loan, that First Union was servicing for, or under pooled programs of, FHLMC and others. [Schroer Affidavit, ¶ 7]. With respect to those loans owned by or pooled under programs of FHLMC, which included Mr. Oppong's Loan, the effective Transfer Date of the servicing rights to Wells Fargo was to be March 16, 2001. [Schroer Affidavit, ¶ 8, Servicing Rights Sale Agreement, Sections 1.2 and 2.1(a) and 2.3]. In accordance with Section 4.7 of the Servicing Rights Sale Agreement, on or about February 26, 2001, Mr. Oppong was notified that the servicing of the Loan was being transferred from First Union to Wells Fargo effective March 16, 2001. [See Complaint, Exhibit "A;" Schroer Affidavit, ¶ 9]. On or About February 28, 2001, Federman & Phelan was notified by First Union that the servicing of Mr. Oppong's Loan was being transferred to Wells Fargo effective March 16, 2001. [Schroer Affidavit, ¶ 10].

The servicing of Mr. Oppong's Loan was transferred by First Union to Wells Fargo effective March 16, 2001, pursuant to the Servicing Rights Sale Agreement and Wells Fargo assumed all obligations and liabilities of First Union that accrued after the Sale Date (August 31, 2000) with respect to the Servicing Rights being sold and transferred to it. [Schroer Affidavit, ¶ 11, Servicing Rights Sale Agreement, Section 2.1; Appendix of Exhibits, Exhibit "F" – Answer of Wells Fargo to First Union's Interrogatory No. 2]. Pursuant to Section 4.12(a) of the Servicing Rights Sale Agreement, First Union, as successor by merger to CoreStates, caused

3

the Mortgage to be nominally assigned to Wells Fargo by assignment dated April 13, 2001, but made effective March 15, 2001, to facilitate Wells Fargo's servicing of the Loan for FHLMC on and after March 16, 2001. [Schroer Affidavit, ¶ 12].

Prior to March 16, 2001, Federman & Phelan was authorized by First Union, as servicer for FHLMC, to take action to collect the Loan and prosecute the mortgage foreclosure action captioned <u>First Union Mortgage Corporation, s/b/m to CoreStates Mortgage Services Corporation vs. Atuahene Oppong</u>, No. 002221, January 2000 Term (the **"2000 Foreclosure Action"**). [Schroer Affidavit, ¶ 13]. Federman and Phelan ceased representing First Union with respect to the collection of the Loan and the prosecution of the 2000 Foreclosure Action on March 15, 2001. [Schroer Affidavit, ¶ 14; Appendix of Exhibits, Exhibit "G" – Answer of Mr. Hallinan to First Union's Interrogatory No. 8]. At no time after March 15, 2001, did Federman & Phelan communicate any further with First Union regarding the Loan or the 2000 Foreclosure Action until shortly after Mr. Oppong threatened to commence this lawsuit in November of 2001. [Schroer Affidavit, ¶ 16]. Federman & Phelan submitted no bills to First Union for services rendered or expenses incurred after March 15, 2001, in connection with the collection of the Loan or the pursuit of the 2000 Foreclosure Action. [Schroer Affidavit, ¶ 17]. To the extent Federman & Phelan continued to collect the Loan or prosecute the 2000 Foreclosure Action in the name of First Union on or after March 16, 2001, it did so without the knowledge, permission or consent of First Union. [Schroer Affidavit, ¶ 15; Appendix of Exhibits, Exhibit "G" – Answer of Mr. Hallinan to First Union's Interrogatory No. 6].

From March 16, 2001, forward, Federman & Phelan represented Wells Fargo, not First Union, with respect to the collection of the Loan and the pursuit of the 2000 Foreclosure Action. [Schroer Affidavit, ¶ 18; Appendix of Exhibits, Exhibit "F" and "G" – Answer of Wells Fargo to First Union's Interrogatory No. 3 and Answers of Mr. Hallinan to First Union's

4

Interrogatory Nos. 5 and 8]. All of the conduct that forms the basis for Mr. Oppong's claims against First Union in this lawsuit took place after April 13, 2001. [Complaint, ¶ 1; N.T. Oppong Dep., pp. 12-24, 45-49]. Federman & Phelan appeared at the June 5, 2001, hearing in the 2000 Foreclosure Action as counsel for Wells Fargo, not as counsel for First Union. [See Appendix of Exhibits, Exhibits "G" and "I" – Answers of Mr. Hallinan to First Union's Interrogatory Nos. 5 and 8 and Answers of Wells Fargo to Mr. Oppong's Request for Admissions Nos. 20 and 29]. On August 21, 2001, Mr. Hallinan was a partner in the law firm of Federman & Phelan. [See Appendix of Exhibits, Exhibit "J" – Answer of Mr. Hallinan to Mr. Oppong's Request for Admission No. 1]. Mr. Hallinan was not representing First Union on August 21, 2001. [Schroer Affidavit, ¶ 20; Appendix of Exhibits, Exhibit "G" - Answer of Mr. Hallinan to First Union's Interrogatory No. 8].

No one employed by First Union had any direct contact with Mr. Oppong with respect to the Loan, the Mortgage or the 2000 Foreclosure Action after March 15, 2001 (other than the letter of response to Mr. Oppong from Marie Harper dated November 2, 2001   See Exhibit "R" attached to Mr. Oppong's Requests for Admissions Directed to First Union). [Schroer Affidavit, ¶ 19]. At no time did First Union directly engage in any of the offensive conduct alleged in the Complaint and all such conduct (if true) was taken by Federman & Phelan or one of its attorneys. [See Appendix of Exhibits, Exhibit "E" – Answers of Mr. Oppong to First Union's Interrogatory Nos. 10, 11, 15, 18 and 19].

The only alleged physical injury suffered by Mr. Oppong as a result of his encounter with Mr. Hallinan on August 21, 2001, was to his right hand, he sought no medical treatment for this alleged injury, he did not incur any medical bills for this alleged injury, he suffered no loss of income as a result of such injury. [See Appendix of Exhibits, Exhibits "C" – Answers of Mr. Oppong to Wells Fargo's Interrogatory Nos. 4, 7, 9, 10, 11, 13, 15, 16, 17, 20

and 21] Mr. Oppong does not intend to call any expert witnesses at trial. [See Appendix of Exhibits, Exhibit "D" - Answer of Mr. Oppong to Wells Fargo's Expert Interrogatories].

## III. ARGUMENT.

### A. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505 (1986). "Material facts are those which may affect the outcome of a case under applicable law." Anderson, 477 U.S. at 248.

Although the movant has the initial burden of calling the court's attention to the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 84 (3d Cir. 1987).

### B. FIRST UNION IS NOT A "DEBT COLLECTOR" UNDER THE FAIR DEBT COLLECTION PRACTICES ACT.

In Count I of the Complaint, Mr. Oppong contends that First Union and the other defendants are liable to him for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"). The FDCPA was enacted to regulate the collection of consumer debts by "debt collectors." 15 U.S.C. § 1692(e). The term "debt collector" is defined

6

by the FDCPA to term "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Specifically excluded from the term "debt collector" is (i) any officer or employee of a creditor while, in the name of such creditor, collecting debts for such creditor and (ii) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity concerns a debt which was originated by such person. 15 U.S.C. §§ 1692a(6)(A) and (F)(ii).

First Union is not a "debt collector." The Loan was originated by CoreStates. First Union is the successor by merger to CoreStates. Therefore, First Union falls within the exclusion found at Section 1692a(6)(F)(ii) of the FDCPA. Since only "debt collectors" can be held liable for violations of the FDCPA, see 15 U.S.C. § 1692k(a); Holmes v. Telecredit Service Corp., 736 F. Supp. 1289 (D. Del. 1990), the claim of Mr. Oppong against First Union in Count I of the Complaint for alleged violations of the FDCPA must be dismissed without regard to whether any of the actions alleged in the Complaint do or do not constitute violations of the FDCPA.

## C. FIRST UNION IS NOT VICARIOUSLY LIABLE FOR THE ACTIONS OF FEDERMAN & PHELAN OR MR. HALLINAN.

All of the actions complained by Mr. Oppong in his Complaint -- the alleged violations of the FDCPA, the physical and verbal assault and the infliction of emotional distress -- were all performed by the law firm of Federman & Phelan or Mr. Hallinan, a partner in that law firm. Assuming solely for the purposes of this argument only, that Federman & Phelan continued to represent First Union on or after March 16, 2001, with respect to the collection of the Loan or the prosecution of the 2000 Foreclosure Action, First Union cannot be held

7

vicariously liable for the alleged violations of the FDCPA, the physical and verbal assault or the infliction of emotional distress allegedly committed by Federman & Phelan or Mr. Hallinan.

While an employer may be held vicariously liable for the negligent (and sometimes intentional) acts of his employee committed during the course of and within the scope of his employment which causes injury to a third party, see e.g., Costa vs. Roxborough Memorial Hospital, 708 A.2d 490, 493 (Pa. Super. 1998), appeal denied, 556 Pa. 691, 727 A2d 1120 (1998), under Pennsylvania law a party generally is not liable for negligent or intentional torts of an independent contractor. See Mahon vs. City of Bethlehem, 898 F. Supp. 310 (E.D. Pa. 1995), reconsideration denied, 902 F. Supp. 76. Whether a party is an employee/servant or an independent contractor is generally a question of law for the court. Jean Anderson Hierarchy of Agents vs. Allstate Life Insurance Co., 2 F. Supp. 2d 688 (E.D. Pa. 1998).

Under Pennsylvania law, an attorney in private practice who is retained to handle a particular matter on behalf of a client acts in the capacity of an independent contractor, and not as an employee, of the client. McCarthy vs. Recordex Serv. Inc., 80 F.3d 842, 853 (3rd Cir. 1996), cert. denied, 117 S. Ct. 86, 519 U.S. 825, 136 L. Ed. 2D 42; Ingersoll-Rand Equipment Corp. vs. Transportation Insurance Co, 963 F. Supp. 452 (M.D. Pa. 1997). While an attorney can be both an independent contractor and an agent, McCarthy vs. Recordex Service, supra, an independent contractor cannot also be a servant since "servant" and "independent contractor" are antithetical terms. Kemether vs. Pennsylvania Interscholastic Athletic Association, Inc., 15 F. Supp. 2d 740 (E.D. Pa. 1998).

Because Federman & Phelan and Mr. Hallinan were at all times acting, at most, as independent contractors for either First Union or Wells Fargo with respect to the collection of the Loan and the prosecution of the 2000 Foreclosure Action, First Union is not liable for any of the negligent or intentional acts committed by them as alleged in the Complaint. Therefore,

8

Mr. Oppong has stated no claim against First Union under Counts I, II or III of the Complaint based on the facts alleged therein.

## D. FIRST UNION IS NOT LIABLE FOR ANY ACTIONS TAKEN BY WELLS FARGO, FEDERMAN & PHELAN OR MR. HALLINAN ON OR AFTER MARCH 16, 2001 WITH RESPECT TO THE COLLECTION OF THE LOAN OR THE PROSECUTION OF THE 2000 FORECLOSURE ACTION.

First Union should be dismissed from this case because it has had no involvement with the Loan or Mortgage since March 15, 2001, and all of the conduct giving rise to Mr. Oppong's claims admittedly occurred after April 13, 2001. [See Complaint, ¶ 1]. Federman & Phelan ceased representing First Union on March 15, 2001, with respect to the collection of the Loan and the prosecution of the 2000 Foreclosure Action. From March 16, 2001 forward, Federman & Phelan has at all times represented Wells Fargo with respect to the collection of the Loan and the prosecution of the 2000 Foreclosure Action notwithstanding the admitted fact that the 2000 Foreclosure Action continued to be prosecuted in the name of First Union after that date.

To the extent Federman & Phelan continued to prosecute the 2000 Foreclosure Action in the name of First Union after March 15, 2001, such prosecution was expressly permitted by Rule 2004 of the Pennsylvania Rules of Civil Procedure. See Pa. R. Civ. P. 2004 (if a plaintiff has commenced an action in his name and thereafter transfers the interest therein, in whole or in part, the action may continue in the name of the original plaintiff). To the extent such conduct caused confusion to Mr. Oppong and/or creates liability under any cognizable theory of recovery, then the only persons that can be held liable for such conduct are either Federman & Phelan or Wells Fargo, not First Union. Finally, First Union did not authorize Federman & Phelan to continue the 2000 Foreclosure Action in its name and any action taken in its name by Federman & Phelan on or after March 16, 2001, were taken without First Union's

9

knowledge, permission or consent. After March 16, 2001, Federman & Phelan was representing Wells Fargo with respect to the collection of the Loan and the pursuit of the 2000 Foreclosure Action pursuant to the rights and obligations Wells Fargo acquired and assumed under the Servicing Rights Sale Agreement.

## IV. COUNT III MUST BE DISMISSED BECAUSE MR. OPPONG WILL BE UNABLE TO MEET HIS BURDEN OF PROOF

To establish a claim for intentional infliction of emotional distress under Pennsylvania law, expert medical testimony is required. Kazatsky vs. King David Memorial Park, Inc., 515 Pa. 183, 197, 527 A.2d. 988, 995 (1987); Shiner vs. Moriarty, 706 A.2d. 1228 (Pa. Super. 1998). In his response to Wells Fargo's First Set of Expert Interrogatories, Mr. Oppong reveals that he plans to call no expert witnesses in support of his emotional distress claim at the time of trial. Since he cannot meet his burden of proof without an expert, Count III must be dismissed. In addition, and as more fully discussed above, Mr. Oppong cannot maintain a claim against First Union for intentional infliction of emotional distress because: (i) First Union did not engage directly in any of the conduct alleged in the Complaint to have caused such distress and (ii) First Union is not vicariously liable for the actions of Federman & Phelan or Mr. Hallinan.

## V. CONCLUSION

In light of the foregoing, First Union's Motion for Summary Judgment should be

10

granted, all claims asserted by Mr. Oppong against First Union in this case should be dismissed and First Union should be dismissed as a defendant in this case.

Respectfully submitted,

STEVENS & LEE

Dated: May 6, 2003

By _____

Steven J. Adams
Attorney I.D. No. 56293
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for defendant
First Union Mortgage Corporation

11

## CERTIFICATE OF SERVICE

I, STEVEN J. ADAMS, ESQUIRE, certify that on this date, I served a true and

correct copy of the foregoing Memorandum of Law of Defendant First Union Mortgage

Corporation in Support of its Motion for Summary Judgment upon the following persons, by

depositing the same in the United States mail, postage prepaid, addressed as follows:

Mr. Atuahene Oppong
7200 Sprague Street
Philadelphia, PA 19119

Daniel S. Bernheim, III, Esquire
Silverman, Bernheim & Vogel
Suite 910
Two Penn Center Plaza
Philadelphia, PA 19102

Steven J. Adams, Esquire

Date: May 6, 2003