# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ATUAHENE OPPONG | : |
| Plaintiff | : |
| v. | :    No. 02-CV-2149 |
| FIRST UNION MORTGAGE CORPORATION, WELLS FARGO HOME MORTGAGE, INC. FRANCIS S. HALLINAN | : |
| Defendants | :    **JUDGE EDUARDO C. ROBRENO** |

## O R D E R

AND NOW, this _____ ___ day of May 2003 upon consideration of the Motion for Summary Judgment of Defendants Wells Fargo Home Mortgage, Inc. and Francis S. Hallinan and any response thereto, it is hereby

**ORDERED**, that defendants Wells Fargo Home Mortgage, Inc. and Francis S. Hallinan's Motion for Summary Judgment is GRANTED, and it is further

**ORDERED**, that the Complaint of plaintiff Atuahene Oppong against defendants Wells Fargo Home Mortgage, Inc. and Francis S. Hallinan is DISMISSED with prejudice.

BY THE COURT:

_____ J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA



ATUAHENE OPPONG

                Plaintiff

v.

FIRST UNION MORTGAGE CORPORATION,
WELLS FARGO HOME MORTGAGE, INC.
FRANCIS S. HALLINAN

                Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:

No. 02-CV-2149

**JUDGE EDUARDO C. ROBRENO**

---

## MOTION FOR SUMMARY JUDGMENT OF
## DEFENDANTS WELLS FARGO HOME MORTGAGE, INC.
## AND FRANCIS S. HALLINAN

Defendants Wells Fargo Home Mortgage, Inc. ("Wells Fargo") and Francis S. Hallinan

("Hallinan"), by their undersigned counsel, hereby move for an Order granting Summary Judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure. In further support of this Motion,

defendants incorporated the annexed Memorandum of Law.

                SILVERMAN BERNHEIM & VOGEL

        BY: _Daniel S Bernhm_____

                Daniel S. Bernheim, 3d, Esquire
                Attorney for Defendants,
                Wells Fargo Home Mortgage, Inc. and
                Francis S. Hallinan

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FILED

ATUAHENE OPPONG                          :
                                         :
                        Plaintiff        :
                                         :
        v.                               :        No. 02-CV-2149
                                         :
FIRST UNION MORTGAGE CORPORATION,        :
WELLS FARGO HOME MORTGAGE, INC.          :
FRANCIS S. HALLINAN                      :
                                         :        **JUDGE EDUARDO C. ROBRENO**
                        Defendants       :

---

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS WELLS FARGO HOME MORTGAGE, INC.
### AND FRANCIS S. HALLINAN'S MOTION FOR SUMMARY JUDGMENT

Defendants Wells Fargo Home Mortgage, Inc. ("Wells Fargo") and Francis S. Hallinan ("Hallinan"), by their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment.

### I.      PRELIMINARY STATEMENT

This action stems from a loan granted to the plaintiff, Atuahene Oppong ("Oppong"), on March 6, 1995 for which no payments were made after August 1997. The loan was secured by a mortgage lien on real property located at 7200 Sprague Street, Philadelphia. For over five years Oppong delayed the inevitable judicial foreclosure sale by filing two petitions for removal to this court, four appeals to the Pennsylvania Superior Court, one appeal to the Pennsylvania Supreme Court and one attempt to obtain relief through the United States bankruptcy court.[1] Interspersed

---

[1] Oppong continues to reside in the Sprague Street property where he is presently contesting eviction proceedings.

through-out these various appeals are countless motions and petitions and an eventual trial in the Court of Common Pleas of Philadelphia County wherein the Honorable Gene D. Cohen came to the inescapable conclusion that Mr. Oppong was abusing the system.[2] Upon the entry of judgment in foreclosure, Oppong filed one of his appeals to the Pennsylvania Superior Court as well as a bankruptcy petition, which subsequently was dismissed. In each of those proceedings Oppong attempted - as he does here - to attack the judgment in foreclosure by searching for some technical misstep of the mortgagee and labeling the conduct a violation of the Fair Debt Collection Practice Act ("FDCPA"). While the defendants recognize that Oppong will continue to file some other proceeding in some other forum, there is no basis for which the present action should continue. Each of the acts of which Oppong complains, including his outrageous claim for assault, has been the subject of some motion or hearing in the State Court foreclosure proceedings. In the State Court matter, after the dismissal of Oppong's bankruptcy, Oppong elected not to proceed with his State Court appeal thus rendering as a final judgment the State Court's determination that there had been no violation of the FDCPA. For reasons more fully set forth below, it is appropriate for this Court to enter Summary Judgment in favor of defendant Wells Fargo and to dismiss the claims against Hallinan, which are wholly frivolous.

## II.    FACTUAL BACKGROUND

On January 19, 2000, First Union Mortgage Corporation, successor by merger to CoreStates Mortgage Corporation filed its second complaint in mortgage foreclosure against Oppong in the

---

[2]    In the six years of litigation, Oppong has represented himself without the aid of counsel. Oppong claims to be a "private student," not enrolled in any school, studying economics with intentions of attending the University of Rochester or Oxford, England. Oppong has not been employed since 1998 and as evident by the endless flood of motions, petitions and law suits, Oppong spends his time doing legal research. [Defendants' Interrogatories, Answer #19, Exhibit "C," Tab #2].

-2-

Philadelphia Court of Common Pleas, January Term 2000, No. 2221.[3] [Exhibit "E"]. As evidenced by the docket entries attached hereto, the case traveled a tortured route until trial was finally conducted on January 25, 2002 and January 28, 2002 before the Honorable Gene D. Cohen in the Court of Common Pleas of Philadelphia County. Attached hereto as Exhibit "J" is a copy of the trial transcript.

The complaint in the foreclosure action sets forth a routine claim for judgment in mortgage foreclosure after non-payment of the underlying loan obligation. The foreclosure complaint identified the mortgage executed by Oppong and the unpaid balance due under the mortgage. The foreclosure complaint further avers that notices pursuant to Act 6 of 1974 and Act 91 of 1983 were not applicable in that the original mortgage amount exceeded $50,000.00 and that the mortgage had been in default for over twenty-four months. Nevertheless, attached to the foreclosure complaint was notification pursuant to Act 91 dated October 27, 1999 providing notification of the method by which assistance could be obtained through the Pennsylvania Homeowner's Emergency Assistance Program. Attached hereto as Exhibit "G". In response to that notice, Oppong in fact attended a face to face meeting with a representative of the Program in November 1999 but, in a fashion typical of his dilatory tactics, later failed to submit an application for assistance. [Deposition Transcript, A.

---

[3] An action in foreclosure had previously been commenced at docket number December Term 1997, No. 2043. That action was voluntarily discontinued in an effort to stop the endless litigation over whether Oppong received notice in accordance with the Pennsylvania Homeowner's Emergency Assistance Act, commonly known as Act 91, 35 P.S. §1680.401 et. seq.

Oppong pp. 71-72; Deposition Exhibits Oppong 5 and 6].[4] The result of Oppong's strategy was that he was able to delay proceeding for 60 days.[5]

Although the parties had been in litigation since December 1997, the foreclosure complaint provides in paragraph 11 as follows:

> 11.     Pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1962 et. seq. (1977). Defendant(s) may dispute the validity of the debt or any portion thereof. If Defendant(s) do so in writing within thirty (30) days of receipt of this pleading, counsel for Plaintiff will obtain and provide Defendant(s) with written verification thereof; otherwise the debt will be assumed to be valid. Likewise if requested within thirty (30) days of receipt of this pleading, counsel for Plaintiff will send Defendant(s) the name and address of the original creditor if different from above.

Not too surprisingly, Oppong never requested verification of the debt in writing. Oppong was well aware of the lender's claim by virtue of the fact that the debt had been set forth in the first foreclosure action wherein Oppong twice appealed the entry of judgment against him to the Superior Court of Pennsylvania.[6] In response to paragraph 11 of the second foreclosure complaint, Oppong's Answer (Exhibit "F" attached hereto) avers that, "Plaintiff has waived its rights to Fair Debt

---

[4]   Attached hereto as Exhibit "C" is a copy of the deposition transcript of plaintiff conducted on April 9, 2003 and each of the exhibits identified therein.

[5]   Once notice is issue under Act 91, the recipient has thirty (30) days to arrange a meeting with a representative of the Program. Once a meeting is held, the mortgagee is placed on notice that no further action can be taken for thirty (30) days while a determination is made regarding eligibility for assistance.

[6]   Oppong argued that notice pursuant to 41 P.S. § 403 (Act 6) should have been provided notwithstanding the fact that his loan did not constitute a "residential mortgage" in that it was not in an original principal amount less than $50,000. Oppong felt that the $50,000 cut-off as established by the Act did not accurately reflect the average residential mortgage. Oppong further contested his receipt of the original Act 91 notice issued in advance of the complaint.

-4-

Collection Practices Act." At the eventual trial of this matter, Oppong did not contest the accuracy of the balance claimed to be due under his mortgage and admitted that no payments were made since August 1997 and offered no evidence to contradict the bank's calculation of the debt as pleaded and presented at trial. [Deposition Transcript A. Oppong p. 61-64; Memorandum of Judge Cohen (Exhibit "M")].

After trial and the entry of judgment against him in foreclosure, Oppong filed a Motion for Post Trial Relief. Attached as Exhibit "K". Included in that Motion were the same arguments concerning alleged violations of the Real Estate Settlement Procedure Act (RESPA) and the Fair Debt Collection Practice Act that he again attempts to assert in this proceeding. In response, Wells Fargo accurate noted that the "Trial Judge patiently heard [Oppong's] cross examination of the Plaintiff's witness in regard to his allegations of FDCPA and RESPA violations, over Plaintiff's objections." Attached as Exhibit "L". In his memorandum opinion, Judge Cohen addressed Oppong's FDCPA and RESPA claims as follows:

> The defendant alleges in his post-verdict notions as he did on several occasions prior to trial that the plaintiff violated the fair Debt Collection practices Act and the Real Estate Settlement Procedures Act. The Court will not address these issues in that they have been ruled on against the defendant both the Court of Common Pleas and the United States District Court for the Eastern District of Pennsylvania. [1189]

Judge Cohen went on to stress that,

> It was undisputed that the defendant had not made a mortgage payment since August 1, 1997. Since that point the defendant has been availing himself of the tender mercies of the Court of Common Pleas and has been accommodated within the fullest reaches of the law. **Nonetheless, each issue he has raised has been addressed exponential times. He has had his days in court. (Emphasis added).**

-5-

Oppong eventually filed an appeal to the Pennsylvania Superior Court raising the same FDCPA issues as presented herein. It was pointed out to the Superior Court that these arguments had been rejected by the lower court, first in Oppong's Second Motion to Dismiss Plaintiff's Complaint (attached as Exhibit "I") and, secondly, after opportunity to fully present evidence was afforded at the time of trial. Attached as Exhibit "J". In Oppong's Second Motion to Dismiss the Foreclosure Complaint, in addition to asserting that the complaint was filed "because of his race," Oppong alleged that.

> 6. Wells Fargo Home Mortgage, Inc. has failed to give Defendant notice required by the Fair Debt Collection Practice Act. This Act requires Wells Fargo to confirm with Defendant the existence and amount of the mortgage loan debt. This Act requires Wells Fargo to notify Defendant of its attempt to collect a debt and gives Defendant about sixty days to resolve any misunderstanding regarding the alleged debt before it can consider the debt in default.

This Motion was denied and the matter proceeded to trial notwithstanding Oppong's numerous and continuing attempts to delay the proceedings. Among those attempts were not one, but two petitions to remove the matter to Federal Court, the second of which resulted in an Order dated October 10, 2001, wherein this Court noted, "This is the second attempt by the removing party to remove this case to federal court in what may be an effort to frustrate this mortgage foreclosure action in state court." [Exhibit "P"]

The Superior Court appeal was stayed pending Oppong's bankruptcy petition filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania. In the meantime, Oppong commenced the present action which was also stayed pending the Bankruptcy and a determination by the Superior Court. The Bankruptcy was dismissed and Oppong elected not to continue with the Superior Court appeal. [Deposition Transcript A. Oppong p. 56]. Accordingly on February 6, 2002

this Court entered an Order lifting the stay of proceedings and ordering the parties to proceed with discovery.

## III. THE CAUSES OF ACTION

In his complaint, Oppong raises three separate counts for relief. Count I is for various perceived violations of the Fair Debt Collection Practices Act (FDCPA). Count II is a claim for assault and Count III is a claim for Intentional Infliction of Emotional Distress. Extracting the pertinent allegations contained within paragraphs 15 through 30 (which comprises Count I of the Complaint) are the following assertions that Oppong presents as violations to the FDCPA:

-Wells Fargo failed to give notice of validation of the debt pursuant to 15 U.S.C.A. § 1692(g). (¶ 16 Complaint).

-Exhibit "C" to Plaintiff's Complaint (a document handed to Oppong during the course of trial) did not constitute a validation of debt under the FDCPA. (¶ 16 Complaint).

-Plaintiff's Exhibit "F" to plaintiff's Complaint, a letter dated February 24, 2002 and submitted after the entry of judgment disputed the debt and requested the name and address of the original creditor. (¶ 17 Complaint).

-After the transferring of the servicing of the loan to Wells Fargo, First Union continued to appear in the litigation in an attempt to deceive Oppong. (¶ 18 Complaint).

-Defendants conspired to confuse Oppong. After sending notification that Wells Fargo would be servicing the debt, First Union continued to be identified as the party plaintiff in the pending foreclosure action. (¶ 21 Complaint).

-On August 21, 2001, defendant Francis S. Hallinan, Esquire verbally and physically threatened Oppong in violation of section 1692(d) of the FDCPA. (¶ 23 Complaint).

-First Union falsely presented itself to this Court after servicing of the loan was transferred to Wells Fargo and by asking this court for sanctions in connection with the second attempt at removal. (¶ 25 Complaint).

## IV. STANDARD FOR REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). A factual dispute is "material" if it might affect the outcome of the case under the governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). Additionally, an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to th non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In doing so, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed. 538 (1986). If the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-50.

## V. LEGAL ARGUMENT

### A. OPPONG IS COLLATERALLY ESTOPPED FROM RELITIGATING HIS CLAIMS UNDER THE FAIR DEBT COLLECTION PRACTICE ACT.

Under Pennsylvania law, collateral estoppel requires the concurrence of four essential elements: (1) identity of issues; (2) a prior adjudication on the merits; (3) identity of parties or privity

-8-

with identical parties; and (4) a full and fair opportunity for the parties to litigate the matter in the previous action. Gregory v. Chechi, 843 F. 2d 111, 116 (3d Cir. 1988); Safeguard Mut. Ins. Company v. Williams, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); Frederick v. American Hardware Supply Company, 384 Pa. Super. 72, 74, 557 A.2d 779, 780 (1989). Should these four elements be satisfied, the doctrine of collateral estoppel operates to foreclose the relitigation of issues which had been decided in a previous action. Gregory v. Chechi, supra, 843 F. 2d at 116.

Plaintiff raised by way of new matter in the state court action and litigated by way of preliminary objections, presentment of testimony and appeals the same factual issues as constitute the basis of his affirmative claims in this action. Plaintiff cannot relitigate the same issues as were decided by Judge Cohen. His avenues of relief lie only in the appellate process in state court and indeed, he filed an appeal to the Pennsylvania Superior Court. The very same issues raised in this action were rejected by Judge Cohen, and were the subject of the abandoned appeal. Accordingly, defendants are entitled to summary judgment on the basis of collateral estoppel. See, Scheidy v. Travelers Ins. Co., 1999 WL 144103 (E.D.Pa. 1999)(at*4)(summary judgment proper based upon collateral estoppel defense where issues were raised by the pleadings or otherwise [and were] submitted for determination and [were] determined.").

All of the Fair Debt Collection Practices Act arguments raised herein by the plaintiff were raised in the state court action and thus are barred by the doctrine of collateral estoppel. See, Lal v. Borough of Kennett Square, 786 A.2d 1019, 1020 (Pa. Super. 2002) ("[Plaintiff's] claims are barred by the doctrine of res judicata and collateral estoppel because all of the claims have either been raised or could have been raised in prior litigation."); Yamulla Trucking & Excavating Co., Inc. v. Justofin, 771 A.2d 782, 784 (Pa. Super. 2001) ("The purposes behind the doctrine, which bars the

re-litigation of issues that either were raised or could have been raised in the prior proceeding are to conserve limited judicial resources. establish certainty and respect for court judgments. and protect the party relying on the judgment from vexatious litigation."); also see, Allen v. McCurry, 449 U.S. 90, 94 (1980) ("[r]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits. conserve judicial resources. and, by preventing inconsistent decisions. encourages reliance on adjudication.") Judge Kelly of this Court analyzed the breadth of this doctrine in Richard Johnson Honeyshine Shoe Express Service v. U.S. Equity Realty, Inc., 125 F. Supp. 2d 695 (E.D. Pa. 2000):

> Under Pennsylvania law, the final judgment between Johnson and Defendants in the Municipal Court bars him from bringing the same claims in this case that were raised or that could have been raised in the Municipal Court action...therefore, any claims for payments of the same monies, based on the same facts, under whatever legal theory are barred if they could have been raised before the Municipal Court.

Id. at 699.

Here. Oppong's claims arise from the same issues litigated before Judge Cohen and involve the same facts. Oppong's theories concerning the Fair Debt Collection Practices Act were raised and rejected in that proceeding. While Oppong has attempted to cloak the claims in some of the same theories raised in the state court. as well as some new ones, it does not matter. All of the claims asserted by Oppong were or could have been raised below and are thus barred by the doctrine of collateral estoppel.

Oppong acknowledges having raised these issues on appeal to the Superior Court and permitting that appeal to be dismissed. [Deposition Transcript A. Oppong p. 54-56]. Specifically, Oppong acknowledges that the issue of being provided deceptive forms and having been handed pay-

off statements at time of trial was in fact presented to Judge Cohen and raised in Oppong's Motion for Post Trial Relief [Deposition Transcript A. Oppong p. 74-78]. Oppong acknowledges that his claim that the February 26, 2001 letter introducing Wells Fargo as the servicer on the loan was violation of FDCPA was presented to Judge Cohen and raised on appeal to the Superior Court. [Deposition Transcript A. Oppong p. 82-84]. Oppong also raised in the state court the issue that this court's imposition of sanctions violated the FDCPA. [Deposition Transcript A. Oppong p. 85-86]. Accordingly, not only have all of the facts by which Oppong could assert the claims raised in this action been adjudicated in the state court, the very same legal issues in this action were presented to and received by the state court. If there were a case where litigation may be deemed "duplicative and vexatious," this is it. Wells Fargo and Hallinan are entitled to summary judgment on the basis of collateral estoppel.

## B.   DEFENDANTS COMPLIED WITH THE FAIR DEBT COLLECTION PRACTICES ACT

Plaintiff's protests of FDCPA violations lack any merit. Since plaintiff's indisputable default under the terms of his mortgage, he has received volumes of notifications advising him of his rights and the nature of the debt at issue. The purpose of the FDCPA notice requirements is to assure that a debtor is aware of his rights to contest the validity of a debt. Greer v. Shapiro & Kreisman, 152 F.Supp.2d 679(E.D. Pa. 2001). Clearly, this is a point which has not escaped Mr. Oppong. Oppong's claim that he lacked notification as designed by §1692(g) of the FDCPA is simply not true. To the extent, however, that Oppong wishes to play a technical game of "gotcha" the fact of the matter is that it is Oppong who failed to comply with the act by failing to submit a written notification

-11-

disputing the debt. Nevertheless, the issue of FDCPA compliance was well briefed for the Superior

Court as follows:

### First Union complied with the Fair Debt Collection Practices Act and with Pennsylvania Law in Giving Oppong Notice of its Intent to Foreclose.

First Union gave proper notice of its intent to foreclosure and of its institution of legal action in accordance with 15 U.S.C. 1692, the Fair Debt Collections Practices Act (hereinafter "FDCPA"), and 35 Pa.C.S.A. § 1680.403c, Act 91 of 1983. First Union sent an Act 91 notice to Oppong on October 27, 1999 by certified mail and served Oppong with the Complaint on January 30, 2000.

The Act 91 letter gave valid notice to Oppong of his default and of his rights under the law. The FDCPA validation of debt notice requires only that notice be sent by a debt collector. Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, C.A.9 (Cal. 1999). The debt collector need not also establish actual receipt by the debtor. Id. Moreover, the Act 91 letter stated in clear language that Oppong had thirty days to cure the default by tendering the dollar amount quoted in the letter, that he had the right to cure the default up to one hour before the Sheriff's Sale, and that he also had the right to seek assistance from the Homeowner's Emergency Mortgage Assistance Program.

In addition to its compliance with the FDCPA, the Act 91 letter complied with 35 Pa.C.S.A. § 1680.403c. Section 1680.403c(2) provides that a mortgage lender may ask for full payment of a mortgage obligation and take legal action if notice of the possibility for financial assistance under the homeowner's emergency mortgage assistance program is given at least thirty days prior to the commencement of any legal action. First Union sent the Act 91 letter on October 27, 1999, giving considerable time for cure of the default or application for financial assistance, before filing its Complaint on January 19, 2000. Pursuant to 35 Pa.C.S.A. § 1680.403c, the Act 91 was a written document sent to Oppong's last known address, advising him to contact the mortgagee or a credit counseling agency within thirty days to attempt to resolve the default by restructuring the loan payment schedule or otherwise. The notice also included a statement that, if the mortgagor is unable to resolve the default within thirty days of the mortgagor's first contact with either the mortgagee

or a credit consumer counseling agency, the mortgagor may apply for financial assistance under the homeowner's emergency mortgage assistance program. See 35 Pa.C.S.A. § 1680.403c(b)(5).

Moreover, in accordance with the FDCPA, the Complaint contained a full paragraph indicating Oppong's rights under the FDCPA. Oppong was personally served with the Complaint on January 30, 2000. Pursuant to 15 U.S.C. 1692g(a)(1)-(5), Paragraph 11 specifically set forth that Oppong could dispute the validity of the debt or any portion thereof and that, if not disputed in writing within thirty days of receipt of notice, the debt will be assumed to be valid. Paragraph 11 also stated that, if requested within thirty days of receipt of the pleading, First Union's counsel would send Oppong the name and address of the original creditor if different from the present creditor. Oppong did not send First Union any such request, despite this opportunity to do so. Clearly, this issue raised by Oppong is not about deprivation of any rights. It is just another of Oppong's attempts to delay the foreclosure action.

Furthermore, the Complaint complied with the standards established in Terran v. Kaplan, 109 F.3d 1428, C.A. 9 (Ariz. 1997), which held that a valid notice letter must effectively convey the notice that Congress required of the debtor's right to dispute the debt, in print large enough to be easily read and in language not overshadowed or contradicted by other messages or notices appearing in the letter. First Union's Complaint met this standard since the FDCPA notice was prominently set in its own paragraph in 12 point font and was not overshadowed or contradicted by any other information in the pleading.

In the "Statement of Fact" section of his brief, Oppong accuses Wells Fargo of failing to give him validation of the mortgage debt, allegedly in violation of the FDCPA, before the transfer of rights under the Mortgage from First Union to Wells Fargo. However, such notice is not required by the FDCPA. Oppong cites no section of the FDCPA in support of his argument, and after a diligent attempt to find such law, Wells Fargo is also unable to locate any law requiring it to provide a new FDCPA notice after a change of mortgage holder.

**The FDCPA does not apply to Wells Fargo or its predecessors since they are not considered "debt collectors" under the statute.**

The FDCPA does not apply to mortgagees. Rather, under the FDCPA, a debt collector is defined as any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate a third person is collecting or attempting to collect the debt. A mortgage company is not a "debt collector" within the meaning of FDCPA. 15 U.S.C. § 1692a(6). Oldroyd v. Associates Consumer Discount Company/PA, 863 F.Supp. 237 (E.D.Pa. 1994). Therefore, the FDCPA does not apply to Wells Fargo. Wells Fargo's acquisition of Oppong's mortgage is totally irrelevant to Oppong's rights under the FDCPA.

**The purpose of the Fair Debt Collection Practices Act has been satisfied.**

15 U.S.C. § 1692 states:

The purpose of the Fair Debt Collection Practices Act is to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

Since Oppong has continually disputed and contested this foreclosure action, as evidenced by the trial court's record, the purpose of the Act has been fulfilled. In addition, Oppong has not alleged any abusive debt collection practices. Moreover, throughout the last five years of litigation, he has not raised any specific dispute regarding his default or the amounts due on the loan. Clearly, Oppong's FDCPA issue is only a delay tactic, since he has not actually disputed the fact that he is in default, which is the central issue in this case.

C. **AS A MATTER OF LAW PLAINTIFF HAS NOT ESTABLISHED A CLAIM FOR ASSAULT**

Plaintiff levels a reckless claim that defendant Francis S. Hallinan committed an assault when the parties shook hands outside of the courtroom on August 21, 2001. Oppong explains he appeared

for a scheduling conference and advised the court and counsel that he just filed his second Motion to Remove the matter to federal court. The parties were excused and counsel and Oppong were standing in City Hall waiting for an elevator. [Deposition Transcript A. Oppong p. 96]. A conversation ensued wherein Mr. Oppong inquired of attorney Sheetal Shah-Jani if she had any offers for settlement. According to Oppong, attorney Hallinan commented that Oppong appeared to be enjoying himself and that he was going to lose his house. Oppong responded by asking Hallinan, "Would you bet on it?" and extended his hand to confirm the bet. Hallinan, who, Oppong estimates to be six inches shorter and thirty pounds lighter, is alleged to have extended his hand and "crushed" Oppong. [Deposition Transcript A. Oppong p.95-102]. Oppong did not whince in pain, he did not report this incident to anybody (not even his live-in girlfriend) and never sought any medical attention.

Assault is an intentional attempt by force to do an injury to the person of another. Cohen v. Lit Brothers, 166 Pa.Super. 206, 209, 70 A.2d 419, 421 (1950). An assault has been described as an act intended to put another person into reasonable apprehension of an immediate battery and which succeeds in causing an apprehension of such battery. Cucinotti v. Ortman, 399 Pa. 26, 159 A.2d 216 (1960). An assault has also been defined as "an act which is a legal cause of a contact with another's person and which is offensive to a reasonable sense of personal dignity if the act is done with the intention of inflicting a harmful or offensive contact upon the other." Esmond v. Liscio, 209 Pa. Super. 200, 224 A.2d 793 (1966). The circumstances presented by Oppong simply do not rise to the level of constituting an assault.

Oppong initiated the contact by flippantly suggesting that Hallinan wager on whether Oppong would ever lose his house and extending his hand to confirm the bet. Hallinan's response did not

-15-

offend the reasonable sense of personal dignity or place Oppong in apprehension of a battery. In fact, it is not disputed that the parties did shake hands. Oppong merely contends that the smaller Hallinan allegedly grabbed his hand too hard and Oppong seeks to make a "federal case" out of a common handshake which he admits caused no need to cry out or subsequent medical attention. As such this claim is not deserving of further consideration and should be dismissed.

### D. OPPONG HAS FAILED TO ESTABLISH A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As noted by the Pennsylvania Superior Court, there is much controversy over whether Pennsylvania recognizes the tort of intentional infliction of emotional distress. See Kazatsky v. King David Memorial Park, 515 Pa. 183, 527 A.2d 988 (1987) (did not adopt the definition of the tort of intentional infliction of emotional distress as defined by Restatement (Second) of Torts § 46); Johnson v. Caparelli, 425 Pa.Super. 404, 625 A.2d 668 (1993) (discusses the different cases addressing the tort of intentional infliction of emotional distress; notes some cases adopted § 46 of the Restatement (Second) of Torts and some do not); Kelly v. Resource Housing of America, Inc., 419 Pa.Super. 393, 615 A.2d 423 (1992) (does not recognize the tort of intentional infliction of emotional distress); Strain v. Ferroni, 405 Pa.Super. 349, 592 A.2d 698 (1991) (does not adopt the Restatement (Second) of Torts § 46's definition of the tort of intentional infliction of emotional distress); Baker v. Morjon, 393 Pa.Super. 409, 574 A.2d 676 (1990) (same). Compare, Hackney v. Woodring, 424 Pa.Super. 96, 622 A.2d 286 (1993) (§ 46 of the Restatement (Second) of Torts definition of the tort of intentional infliction has been adopted by this Commonwealth); Abadie v. Riddle Memorial Hospital, 404 Pa.Super. 8, 589 A.2d 1143 (1991) (same); Motheral v. Burkhart, 400 Pa.Super. 408, 583 A.2d 1180 (1990) (same); Field v. Philadelphia Elec. Co., 388 Pa.Super. 400,

565 A.2d 1170 (1989) (same: distinguishing the Superior Court case of Kazatsky v. King David Memorial Park, supra on procedural grounds). Compare also Ford v. Isdaner, 374 Pa.Super. 40, 542 A.2d 137 (1988), alloc. denied, 520 Pa. 617, 554 A.2d 509 (1988) (interprets Kazatsky v. King David Memorial Park, supra as stating the tort of intentional infliction of emotional distress is not recognized in this Commonwealth). Hart v. O'Malley, 436 Pa.Super. 151, 174, 647 A.2d 542, 553 (1994).

Nevertheless, the gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor. Section 46(1) of the Restatement (Second) of Torts. As further explained in the Restatement,

> d. Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no

-17-

> occasion for the law to intervene in every case where
> some one's feelings are hurt.

Restatement (Second) of Torts § 46 comment d. (1965).

It is also clear that in Pennsylvania, in order to establish a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must suffer physical injury and prove the existence of alleged emotional distress by competent medical evidence. Kazatsky v. King David Memorial Park, supra. Oppong's claim meets not one of these standards.

In a sweeping allegation, Oppong claims that "all of defendants' behavior and conduct has been extreme, outrageous, shocking an of such egregiousness as to be utterly intolerable in any civilized society." (¶ 36 Complaint). The fact of the matter is that the defendants have been trying to exercise rights afforded a lender where the borrower, Mr. Oppong, simply stopped paying his mortgage. The only outrageous conduct in this matter has been Mr. Oppong's abuse of our legal system to permit him to live rent free for six years. There has been no improper conduct on behalf of any of the defendants. Thus, the lack of outrageousness coupled with the absence of injury and medical evidence warrants the dismissal of plaintiff's claim for intentional infliction of emotional distress.

## VI. CONCLUSION

For the reasons set forth herein, there being no genuine issue of material fact it is respectfully requested that this Court grant the Motion for Summary Judgment for Defendants Wells Fargo Home Mortgage, Inc. and Francis S. Hallinan and enter an Order dismissing plaintiff's Complaint.

SILVERMAN BERNHEIM & VOGEL

BY: _____
Daniel S. Bernheim, 3d, Esquire
Attorney for Defendants,
Wells Fargo Home Mortgage, Inc. and
Francis S. Hallinan

## CERTIFICATE OF SERVICE

I, DANIEL S. BERNHEIM, 3d, certify that on May 6, 2003, I caused a true and correct copy of the foregoing Motion for Summary Judgment to be served by first-class mail, postage prepaid upon the following:

Atuahene Oppong
7200 Sprague Street
Philadelphia, PA 19119

Steven J. Adams, Esquire
Stevens & Lee
111 North 6th Street
P.O. Box 679
Reading, PA 19603

SILVERMAN BERNHEIM & VOGEL

By: _____
Daniel S. Bernheim, 3d, Esquire