```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ATUAHENE OPPONG,               :    CIVIL ACTION
                               :    NO. 02-2149
          Plaintiff,           :
                               :
     v.                        :
                               :
                               :
FIRST UNION MORTGAGE           :
CORP. et al.,                  :
                               :
          Defendants.          :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                JULY 24, 2008

On April 16, 2002, plaintiff Atuahene Oppong ("Oppong"), a pro se litigant, filed this action against defendants First Union Mortgage Corporation ("First Union"), Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), and Francis S. Hallinan, Esquire ("Hallinan"), under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., based on defendants' efforts to foreclose on a mortgage on Oppong's residence, located at 7200 Sprague Street in Philadelphia, Pennsylvania. Specifically, Oppong has alleged that the defendants did not provide him with the requisite validation information concerning his debt pursuant to § 1692(g).[1]

---

[1] Oppong had also brought state law claims of assault and intentional infliction of emotional distress against First Union

-1-

I.  BACKGROUND

On December 29, 2003, the Court granted summary judgment for all defendants, finding that none were "debt collectors" and thus could not be held liable under the FDCPA. Oppong v. First Union Mortgage Corp., 2003 U.S. Dist. LEXIS 23722 (E.D. Pa. Dec. 30, 2003).  As the remaining state law claims against First Union and Hallinan were supplemental to plaintiff's FDCPA claim, the Court exercised its discretion and dismissed them without prejudice.  Oppong timely appealed and on November 20, 2004, the Third Circuit affirmed as to First Union and Hallinan, but vacated and remanded as to the FDCPA claim against Wells Fargo.  The Third Circuit held that a genuine issue of material fact existed regarding Wells Fargo's status as a debt collector.  Oppong v. First Union Mortgage Corp., 112 Fed. App'x 866 (3d Cir. July 22, 2004).

After some additional discovery, the parties filed cross-motions for summary judgment.  On December 29, 2005, the Court granted Wells Fargo's second motion for summary judgment and denied Oppong's motion for summary judgment, holding that while Wells Fargo was a "debt collector," Oppong's claim was barred by res judicata.[2]  Oppong v. First Union Mortgage Corp.,

---

and Hallinan.  These claims have since been dismissed.

[2] The Court was referring to the foreclosure action filed on January 19, 2000, against Oppong in the Philadelphia Court of Common Pleas.

407 F. Supp. 2d 658 (E.D. Pa. 2005).  Again, plaintiff timely appealed and on January 26, 2007, the Third Circuit affirmed in part and vacated in part.  The Court held that Oppong's claim against Wells Fargo was not barred by res judicata because the Common Pleas Court decision was not on the merits.  <u>Oppong v. First Union Mortgage Corp.</u>, 215 Fed. Appx. 114 (3d Cir. Jan. 26, 2007).  However, it upheld the Court's determination that Wells Fargo was a "debt collector" within the meaning of the Act.  Thus, the Third Circuit remanded the case for a second time.[3]  <u>Id.</u>

Following remand, the Court held a day-long trial on October 30, 2007, at which it heard testimony from Oppong and received documentary evidence from both parties.  Pursuant to Federal Rule of Civil Procedure 52(a), the Court enters the following findings of fact and conclusions of law.

II. FINDINGS OF FACT[4]

1.  On March 6, 1995, Atuahene Oppong obtained a loan from First Union which was secured by a mortgage on his

---

[3] At Wells Fargo's request, the Court delayed holding a hearing until the Third Circuit panel decided Wells Fargo's petition for rehearing before the panel, which it denied on March 19, 2007.  It appears from the Third Circuit's docket that Wells Fargo did not petition for a writ of certiorari to the Supreme Court.

[4] The facts are undisputed.

residence.[5]

      2.    A year later, Oppong defaulted on the loan.

      3.    On January 19, 2000,[6] First Union filed a complaint ("Foreclosure Complaint") in the Court of Common Pleas of Philadelphia County.  The firm of Federman and Phelan ("Federman") was retained as counsel on behalf of First Union.

      4.    On February 26, 2001, while the foreclosure action was pending, Wells Fargo sent a letter to Oppong indicating that on March 16, 2001, First Union would be transferring the servicing of Oppong's mortgage to Wells Fargo.  The letter stated that as of that date, Wells Fargo would be responsible for processing loan payments, answering loan-related questions, and that loan repayment checks should be payable to Wells Fargo in the future.  The letter also indicated that if Oppong's mortgage loan was in default, which it happened to be, the letter was to serve as notice that Wells Fargo would attempt to collect that debt.

      5.    On January 25, 2002, trial commenced on First Union's foreclosure action against Oppong.  During the

---

[5] Oppong received the loan from Corestates Mortgage Corporation which, shortly thereafter, merged with First Union and assumed its name.  The merger took place well before plaintiff's delinquency.

[6] First Union had initially filed a foreclosure action in December of 1997, based on the default.  This action was voluntarily withdrawn shortly thereafter.

proceeding, Sheetal R. Shah-Jani, Esquire, an attorney with Federman, provided Oppong with a "payoff figure," that is, an itemization of the amounts allegedly owed by Oppong on the loan, totaling $115,931.37, including both the balance owed by Oppong on the loan and the various attorneys' fees which had accumulated.

      6.    On February 12, 2002, judgment was entered in favor of First Union and against Oppong in the foreclosure action.

      7.    On February 24, 2002, Oppong wrote a letter to Federman and to Wells Fargo, disputing the amount of the debt for the first time.

      8.    On March 12, 2002, Shah-Jani responded to Oppong's letter, stating that Oppong only had thirty days to dispute the debt from the date he received notice that the servicing of his mortgage had been transferred to Wells Fargo, February 26, 2001, and that said time had already passed.

      9.    The only interaction between Oppong and Wells Fargo, at any relevant time, was the letter sent by Wells Fargo to Oppong, dated February 26, 2001, stating that it had assumed the role of servicer of plaintiff's mortgage.

      10.   Wells Fargo never sent Oppong a validation notice.

      11.   Wells Fargo never attempted to collect the debt.

III. CONCLUSIONS OF LAW

    A. <u>Foreclosure Complaint as an Initial Communication</u>

The FDCPA was enacted to provide a remedy to victims of abusive, deceptive and unfair collection practices by debt collectors. <u>Piper v. Portnoff Law Assoc.</u>, 396 F.3d 227, 232 (3d Cir. 2005). The applicable section of the FDCPA reads:

> Within 5 days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
>     1) the amount of the debt;
>
>     2) the name of the creditor to whom the debt is owed;
>
>     3) a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assume to be valid by the debt collector;
>
>     4) a statement that if the consumer notifies the debt collector in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
>     5) a statement that, upon the consumer's written request within the 30-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g. A correspondence from the creditor to the debtor containing the above information is known as a validation notice. <u>Wilson v. Quadramed</u>, 225 F.3d 350, 354 (3d Cir. 2000). The purpose of the validation notice is to inform a debtor of his

rights and obligations to his creditors.  Id.

Oppong contends that he was not provided with a validation notice, either before or after the transfer of his debt to Wells Fargo.  Wells Fargo argues that Oppong had in fact been provided with the information required in a validation notice by Federman and Phelan on behalf of First Union.  Wells Fargo contends that the Foreclosure Complaint in the foreclosure action constituted the initial communication and that it contained all the information required by the statute.  It is necessary, then, for this Court to first determine whether (1) the Foreclosure Complaint filed on behalf of First Union qualified as an "initial communication" and if so (2) whether it contained all of the necessary information to constitute a proper validation notice.[7]

The FDCPA, defines a "communication" as the conveying of information regarding a debt directly or indirectly to any person through any medium.  15 U.S.C. § 1692a(2).  In the Third Circuit, it is clear that communications by the creditor to the debtor in the context of litigation, specifically filing a foreclosure complaint, constitute "initial communications" and are thus covered under the FDCPA.  Piper, 396 F.3d at 235; see

---

[7] At trial, Oppong conceded that if the Foreclosure Complaint satisfied the requirements of § 1692g, the case would have to be resolved in defendant's favor.  Trial Tr. 29:15-17, Oct. 30, 2007.

also Goldman v. Cohen, 445 F.3d 152 (2d Cir. 2006) (holding that there was no reason to exclude legal pleadings from the definition of a communication under the FDCPA). Additionally, at least two courts have argued that excluding pleadings from the definition of "communication" would allow "debt collectors [to] avoid their obligation to advise debtors of their validation rights altogether by initiating litigation." Jerman v. Carlisle, 502 F. Supp. 2d 686, 692 (N.D. Ohio 2007) (citing Thomas v. Cybak, 392 F.3d 914, 919 (7th Cir. 2004). Therefore, the Court finds that the Foreclosure Complaint in this case served as an "initial communication" to the debtor,[8] triggering the FDCPA requirements.

The remaining question is whether the Foreclosure Complaint satisfied the elements of § 1692. The statute requires that a validation notice contain: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that the debtor may dispute the debt's validity within 30 days of receipt of the communication; (4) a statement that if the debtor does dispute the debt within 30 days, the debt collector shall send the debtor

---

[8] Effective October 13, 2006, an amendment to the FDCPA provided, "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section." § 1692g. This Court will not apply this Amendment retroactively and will instead adhere to the statute and case law as they both existed as the time when the cause of action arose. See, e.g., Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 509 (6th Cir. 2007).

a verification of the debt or a copy of a judgment entered against him; and (5) a statement that if requested within the 30 day period, the debt collector will send to the debtor the name and address of the original creditor if different from the current one.

In the Foreclosure Complaint, Oppong was provided with the following information:

**Paragraph 1** - Plaintiff is

    FIRST UNION MORTGAGE CORPORATION,
    S/B/M TO CORESTATES MORTGAGE SERVICES CORPORATION
    1100 CORPORATE CENTER DRIVE
    RALEIGH, NC 27607-5066

**Paragraph 6** - The following amounts are due on the mortgage:

| | |
|---|---:|
| Principal Balance | $63,106.68 |
| Interest | 10,145.40 |
| 7/1/97 through 1/1/00 | |
| (Per Diem $11.10) | |
| Attorney's Fees | 3,155.00 |
| Cumulative Late Charges | 929.99 |
| Cost of Suit and Title Search | <u>550.00</u> |
| Subtotal | 77,887.07 |
| | |
| Escrow | |
| Credit | 0.00 |
| Deficit | <u>4,479.66</u> |
| Subtotal | 4,479.66 |
| | |
| TOTAL | $82,366.73 |

**Paragraph 11** - Pursuant to the Fair Debt and Collection Practices Act, 15 U.S.C. § 1692 et seq. (1977), Defendant(s) may dispute the validity of the debt or any portion thereof. If Defendant(s) do so in writing within thirty (30) days of receipt of this pleading, Counsel for the Plaintiff will obtain and provide Defendant(s) with written verification thereof; otherwise, the debt will be assumed valid.

>     Likewise, if requested within thirty (30) days of receipt of
>     this pleading, Counsel for the Plaintiff will send
>     Defendant(s) the name and address of the original creditor
>     if different from above.

It is apparent from the above three paragraphs that the requirements of the statute were fulfilled:

1. The amount of the debt was $82,355.73 (¶ 6);
2. The creditor was First Union Mortgage Corporation (¶ 1);
3. A statement that the debtor may dispute the debt within 30 days (¶ 11);
4. A statement that if the defendant did dispute the debt within 30 days, the debt collector shall send the debtor a verification of the debt or a copy of a judgment entered against him (¶ 11); and
5. A statement that if requested within the 30 day period, the debt collector will send to the debtor the name and address of the original creditor if different from the current one (¶ 11).

Accordingly, the Court concludes that Oppong was provided with all the requisite validation information in the Foreclosure Complaint filed by First Union.

### B. Least Sophisticated Consumer

In addition to containing the information prescribed by

the statute, a validation notice must also be able to be understood by the "least sophisticated consumer."[9] Wilson v. Quadramed Corp., 225 F.3d 350, n.2 (3d Cir. 2000) (holding that whether a validation notice accompanying an extraneous document, such as a complaint or a letter, comports with the least sophisticated consumer standard, is a question of law).  For example, when the requisite information is hidden within the notice, or when the debtor's rights are "overshadowed" by the text of the document within which it is sent, the initial communication has been found to be confusing to the least sophisticated consumer, and thus invalid.  Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991).  In other words, in addition to requiring the text of the notice to contain certain information, the validation notice cannot induce the debtor to ignore his legal rights.  Id.  But see Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993) (holding that the least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care").  The least sophisticated consumer test is an objective standard.  Farren v. RJM

---

[9] In adopting this standard, the Third Circuit referenced the language of United States v. National Financial Services Inc. 98 F.3d 131, 136 (4th Cir. 1996) (holding that "[t]he basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd").

Acquisition Funding, LLC, 2005 U.S. Dist. LEXIS 15230, *15 (E.D. Pa. Jul. 29, 2005) (citing Graziano, 950 F.2d at 111).

In the present case, the Court finds that the validation information contained in the Foreclosure Complaint did not threaten Oppong, was not prolix (only four pages in length, double-spaced), provided the relevant information in a conspicuous and straightforward manner, indicated that the drafter was in fact a debt collector trying to collect a debt, cautioned Oppong to seek legal advice, and instructed him that if he could not afford counsel, to call the local legal reference service for advice, providing the name and address.  As such, it would have been understood by the least sophisticated consumer.

There is, however, one potential ambiguity in the validation notice which must be reconciled.  The Foreclosure Complaint provided on its cover page that the debtor had 20 days "after the Complaint and Notice are served" to enter an appearance "personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you."  By contrast, paragraph 11 of the Foreclosure Complaint provides that, "defendant may dispute the validity of the debt . . . in writing within 30 days of receipt of this pleading."  In other words, while the § 1692g notice requires a debtor to respond within 30 days, the state court rule requires a defendant to answer a complaint within 20 days of its filing.

See Thomas v. Cybak, 392 F.3d 914, 919 (7th Cir. 2004) ("[T]he validation notice could potentially give the debtor the false impression that it has 30 days before it is required to take any action in the lawsuit.").

The Sixth Circuit was confronted with the identical issue in Federal Home Mortgage Corp. v. Lamar. 503 F.3d 504. There, the complaint sent to the debtor advised him that he had 20 days to file an answer to the complaint. In the same complaint, the creditor advised the debtor that he had 30 days within which to dispute the debt. Id. Holding that the complaint did not violate the FDCPA, the Court wrote, "[w]e find that the least sophisticated consumer, after carefully reading the summons, notice, and complaint in their entirety, would not be led to believe that she did not have thirty days in which to dispute the validity of the debt. [Defendant] was not obligated to include further reconciling language to comply with the FDCPA."[10]  Id. at 511; see also Goldman, 445 F.3d at 155 (finding unpersuasive the argument that it would be confusing to the debtor if required to comply with both the 20- and 30-day

---

[10] The district court in Lamar explained it this way: "[T]he least sophisticated consumer, with a careful reading of the language in the Summons and Complaint, including the statutorily required notice, would understand that there were two different time periods within which she must act, and that the time periods run at the same time, from the day after the Summons and Complaint is received." Fed. Home Loan Mortgage Corp. v. Lamar, 2006 U.S. Dist. LEXIS 5924, at *22 (N.D. Ohio Aug. 22, 2006).

deadlines).

The Court agrees with the reasoning in <u>Lamar</u> and <u>Goldman</u>.[11]  In the Foreclosure Complaint, Oppong was presented with two distinct deadlines within which to perform two distinct actions; one, when to file an answer to the complaint and two, when to dispute the debt.  The least sophisticated consumer, upon reviewing the complaint, would have comprehended and been able to follow these independent deadlines.

### B.    Notice of Transfer Letter

Under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C § 2605(b), a servicer of any federally related mortgage loan is required to notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person or business at least 15 days prior to the transfer.  Oppong received notice of this transfer from Wells Fargo in a letter dated February 26, 2001, and Wells Fargo assumed the servicing of Oppong's loan on March 16, 2001.  Oppong

---

[11] While the same conclusion was reached in these two cases, the Sixth Circuit in <u>Lamar</u> criticized the Second Circuit's proposed "reconciling language" in <u>Goldman</u>.  The <u>Goldman</u> Court held that separate dates were permissible with the caveat that the foreclosure complaint contain language explaining the two deadlines.  <u>Goldman</u>, 445 F.3d at 157.  The more recent decision in <u>Lamar</u> with which this Court concurs, held that "[t]o require debt collectors to include such language goes beyond the plain language of the statute and favors the consumer at the debt collector's expense."  <u>Lamar</u>, 503 F.3d at 510.

argues that Wells Fargo violated the FDCPA by attempting to collect a debt without first serving upon him a renewed, or second, validation notice.  This argument fails on both the facts and the law.

First, as to the facts, it is uncontested that Wells Fargo did not undertake any debt collection action in this case. Therefore, Oppong fails to prove the "threshold requirement of the FDCPA . . . that the prohibited practices are used in an attempt to collect a 'debt.'"  Piper, 396 F.3d at 232; see also Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000) (holding that there must be an attempt to collect a debt for the FDCPA to apply).

Second, as to the law, even assuming that Wells Fargo was acting as a debt collector in this case, it was not obligated to provide Oppong with what would be a second validation notice (beyond that already provided by Federman and Phelan on behalf of First Union) with the requisite information.  Nichols v. Byrd, 435 F. Supp. 2d 1101, 1106 (D. Nev. 2006) (holding that if Congress had intended to obligate every subsequent debt collector beyond the first to provide validation notice it would have explicitly called for it in § 1692g); see also Senftle v. Landau, 390 F. Supp. 2d 463, 473 (D. Md. 2005) (holding that there is only one "initial communication" with a debtor on a given debt under § 1692g(a), even though subsequent debt collectors "may

enter the picture."); Ditty v. Checkrite, 973 F. Supp. 1320, 1329 (D. Ut. 1997) (holding that after a validation notice has been timely sent, a subsequent collector does not need to provide additional notice and another thirty-date validation period).

To the extent that there is authority to the contrary, see, e.g., Griswold v. J & R Anderson Bus. Serv., 1983 U.S. Dist LEXIS 20365 (D. Or. Aug. 11, 2005) (holding that each collector must provide information required by § 1692g); see also Turner v. Shenandoah Legal Group, P.C., 2006 U.S. Dist. LEXIS 39341 (E.D. Va. June 12, 2006) (stating that every debtor is owed the same duty from each and every debt collector, lest an "end-run around the validation notice requirement" be created), it is not persuasive.  Under the FDCPA, the goal of the initial communication is to advise the debtor of his rights and obligations to his creditor.  Once the validation information is provided in the initial communication, and once the debtor is made aware of his rights at the time the collection process begins, it would serve no purpose to require that the same information be given again and again, each time the servicing function was passed from one creditor to another.[12]

IV. CONCLUSION

---

[12] As discussed above, RESPA requires that the debtor be apprised of a transfer of the servicing function from one creditor to another.  This was done here.

For the reasons set forth above, the Court finds that: a) the Foreclosure Complaint constituted an initial communication; b) the initial communication contained the validation information in compliance with § 1692g; c) the Foreclosure Complaint, taken as a whole, could not induce the least sophisticated consumer to ignore his legal rights under the FDCPA; d) Oppong was timely advised of the transfer of servicing of his loan from First Union to Wells Fargo; and e) there was no duty on the part of Wells Fargo to serve upon Oppong a second validation notice.  Accordingly, judgment shall be entered in favor of defendant Wells Fargo and against plaintiff Atuahene Oppong.  An appropriate order follows.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| ATUAHENE OPPONG, | : | CIVIL ACTION |
| | : | NO. 02-2149 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FIRST UNION MORTGAGE | : | |
| CORP. et al., | : | |
| | : | |
| Defendants. | : | |

### O R D E R

**AND NOW**, this **24th** day of **July, 2008,** pursuant to Fed. R. Civ. P. 52(a) and for the reasons set forth in the findings of fact and conclusions of law, judgment is entered in favor of the defendant Wells Fargo and against the plaintiff Atuahene Oppong.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (doc. no. 78) is **DENIED as moot.**

**IT IS FURTHER ORDERED** that defendant's motion to strike plaintiff's motion for summary judgment (doc. no. 80) is **DENIED as moot.**

**AND IT IS SO ORDERED**

　　　　　　　　　　　　　　　　　　　　S/Eduardo C. Robreno
　　　　　　　　　　　　　　　　　　　　**EDUARDO C. ROBRENO, J.**